NO. 07-03-0404-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 15, 2004
_____

BENNIE DENNIS,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 10,135; HON. TOM NEELY, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, REAVIS, and CAMPBELL, JJ.

Appellant Bennie Dennis appeals his conviction for delivering a controlled substance, namely cocaine. He raises nine issues wherein he contends that 1) the evidence was insufficient to support the jury's verdict, 2) the trial court erred in overruling his motion for new trial because the verdict was contrary to the law and the evidence, a material fact witness was prevented from coming to court, and exculpatory evidence was withheld, 3) he was denied a fair trial because the only remaining African-American

member of the venire was struck from the panel, 4) he received ineffective assistance of counsel, 5) the State failed to provide exculpatory evidence, 6) evidence of extraneous offenses was improperly admitted and his counsel was ineffective by failing to object to it, and 7) the trial court erred in denying his motion for expert analysis of an audio tape recording of the drug transaction. We affirm the judgment of the trial court.

### *Background*

On November 4, 2002, James Redwine, a paid informant for the Department of Public Safety working under Sergeant Randy Alsup, called appellant and made arrangements with him to purchase crack cocaine. Redwine was searched prior to departing for the meeting, given money by Alsup, and wore a recording device.

When Redwine honked the horn of his vehicle outside of appellant's house, an unknown black male came out and approached the vehicle. Redwine told him why he was there, and the individual summoned appellant. A few minutes later, appellant came to the vehicle, and the money and drugs were exchanged. A surveillance investigator observed appellant approach the vehicle in which Redwine was sitting but could not see the actual transaction. After the transaction, Redwine met Alsup at a predetermined location, and Alsup recovered the drugs, which were later proven to be cocaine, and the tape recording.

### *Issues One and Two - Legal and Factual Sufficiency*

In his first two issues, appellant claims that the evidence is insufficient to support the verdict and the trial court erred in overruling his motion for new trial because the verdict was contrary to the law and the evidence. We overrule the issues.

Appellant relies on article 38.141 of the Code of Criminal Procedure which provides:

2

(a)  A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

(b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.141(a) & (b) (Vernon Supp 2004-2005).  In doing so, he points out that because no one testified they saw the drug transaction and no mention of drugs is heard on the tape recording, no corroborating evidence exists.

Although appellant couches his issues in terms of legal and factual sufficiency, corroboration is not reviewed under those standards.  *Cantelon v. State,* 85 S.W.3d 457, 460 (Tex. App.–Austin 2002, no pet.); *see also Cathey v. State,* 992 S.W.2d 460, 462-63 (Tex. Crim. App. 1999) (regarding accomplice witness corroboration under article 38.14 of the Code of Criminal Procedure).  In conducting a sufficiency review of the corroboration of the testimony of a police informant, the court eliminates the testimony of the informant from consideration and examines the record to see if any evidence *tends* to connect the defendant to the commission of the offense.  *Young v. State,* 95 S.W.3d 448, 451 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd); *Cantelon v. State,* 85 S.W.3d at 461.  However, the evidence does not have to directly link the defendant to the crime or establish his guilt beyond a reasonable doubt.  *Torres v. State,* 137 S.W.3d 191, 196 (Tex. App.–Houston [14th Dist.] 2004, no pet. h.); *Young v. State,* 95 S.W.3d at 451.  It need only connect him to the offense.  Finally, we view the corroborating evidence in the light most favorable to the verdict. *Torres v. State,* 137 S.W.3d at 196; *Cantelon v. State,* 85 S.W.3d at 461.

3

If we eliminate Redwine's testimony, we are left with the testimony of Alsup and Kim Arnold, a narcotics investigator. Alsup testified that he searched Redwine and his vehicle before the arranged meeting with the suspect to determine that there were no illegal drugs or contraband on him. Redwine also wore a transmitter to tape the conversation between those involved in the transaction.

When Redwine eventually met with appellant, Arnold was able to identify appellant coming out of the house and approaching Redwine's vehicle. Furthermore, the recording revealed that Redwine asked for "Bennie," called one of the participants in the transaction "Bennie," a third party (whose voice also appeared on the tape) identified one of the participants as "Bennie," words indicating the exchange of a substance for $400 were also captured on tape, and Alsup identified one of the voices on the tape as appellant's. When Redwine returned from the transaction, he delivered to the officer a substance later identified to be cocaine.

The testimony of Alsup, Arnold, and the tape recording tend to connect appellant to the commission of the offense. *See Jefferson v. State,* 99 S.W.3d 790, 792-93 (Tex. App.–Eastland 2003, pet. ref'd) (holding the corroborating evidence sufficient even though the informant went by herself to a house to make the purchase since she had been searched before she left, the officer watched her go into the house, a recording was made of the transaction, the officer testified that appellant's voice was on the recording, and the informant gave the officer cocaine when she returned to his vehicle). Although appellant relies on *Young v. State,* 95 S.W.3d 448, 451-52 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd) to dispute our conclusion, we find that case inapposite. There, the informant was not under observation prior to or at the time of the transaction. Nor did any witness, other than

4

the informant, testify that the informant went to the defendant's house or that the defendant's voice was one of the voices captured on the tape recording. The elements missing in *Young* are present here.

### *Issue Three - Batson Challenge*

Appellant contends in his third issue that he was denied a fair trial because the State struck the only remaining African American venire member for prejudicial reasons.[1] We overrule the issue.

A party may not exercise his peremptory challenges in an invidiously discriminatory manner. *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). Whether such discrimination unconstitutionally taints a peremptory strike is determined through the application of a three-part test. The first step obligates the party claiming discrimination to establish a *prima facie* case of it. *Johnson v. State,* 68 S.W.3d 644, 649 (Tex. Crim. App. 2002). If he does so, then the party who exercised the strikes must provide race neutral reasons for exercising them as he did. *Id.* Once the first and second steps have been satisfied, the movant then must persuade the court that his opponent engaged in purposeful discrimination, which can be done by showing that the justifications offered were pretextual or unfounded. *Id.* Finally, the trial court's ruling on the motion is accorded great deference; thus, we cannot change it unless it is clearly erroneous. *Mathis v. State,* 67 S.W.3d 918, 924 (Tex. Crim. App. 2002).

Here, appellant raised his *Batson* challenge and, in response, the State presented its reasons striking the individual. Thus, we need not determine if the first prong of the test

---

[1]The State struck one other African American but appellant concedes that the State had sufficient grounds to exclude him.

was satisfied. *Johnson v. State,* 68 S.W.3d at 649. Neither is it necessary for us to address whether the reasons offered were facially neutral because appellant fails to allege that they were not. Instead, he claims they were merely a pretext for discrimination. At the hearing, the prosecutor testified that he struck the venire member because he previously had been arrested for family violence and appeared inattentive. Disinterest in the proceedings can be a race neutral explanation for a peremptory strike, *Young v. State,* 848 S.W.2d 203, 209 (Tex. App.–Dallas 1992, pet. ref'd), as can the existence of a prior arrest or criminal history. *See Harris v. State*, 996 S.W.2d 232, 235-36 (Tex. App.–Houston [14th Dist.] 1999, no pet.) (holding that the prosecutor's dislike for the venire member's explanation of his arrest was a race neutral ground). In response, appellant questioned the prosecutor only with respect to whether the charge was still pending. Although appellant argues on appeal that a criminal history check was conducted as to only that prospective juror, no such evidence was adduced at the hearing. Appellant also failed to question the prosecutor as to whether he had struck any other prospect for being inattentive.

It must be remembered that appellant had the burden to prove discrimination; it was not the State's duty to disprove the allegation. Consequently, the State's failure to support, with evidence, the reasons given for striking a venire member is of little import when the appellant acts similarly. *See Johnson v. State*, 68 S.W.3d at 649 (stating that it "is not enough merely to show that a proffered explanation turns out to be incorrect" and that "a party's failure to offer any real rebuttal to a proffered race neutral explanation can be fatal to [a defendant's] claim"). Simply put, the State need not do anything if the appellant does not carry his burden. And, appellant did not carry his burden here since he presented no

6

evidence illustrating that the prosecutor sought to remove the potential juror because of his race. That being so, we cannot find that the trial court's decision was erroneous.

### Issues Four, Five and Six - Ineffective Assistance of Counsel

In his next three issues, appellant argues that he received ineffective assistance of counsel since his trial attorney allegedly failed to properly investigate the case and interview witnesses. So too does he suggest that with regard to an individual named Marshall White, the State withheld his identity. We overrule the issues.

As to the matter of Marshall White, his was the third voice heard on the recording of the drug transaction. And, though the police believed they knew whose voice it was, they were not certain. Nonetheless, appellant admits in his brief that he discovered the identity of White "prior to trial." So too does the appellate record disclose that appellant's trial attorney interviewed White before the trial started, found his testimony to be "unfavorable," and spoke with appellant about his disinclination to call White. Then, it was decided that White would not be called by the defense to testify. Thus, assuming *arguendo* that the State actually knew of White's identity and failed to disclose it, we see no harm given that appellant knew of White before trial, and White had little to say that was helpful to appellant.

Nor can we say that the failure to call White as a witness evinced less than reasonable trial tactic on the part of trial counsel. We have little trouble rejecting the notion that counsel must call witnesses detrimental to his client's interests to be effective. This is so even if appellant believes that he had other witnesses (individuals named Ross and Casiano) who supposedly could have impeached White's credibility by suggesting that White actually sold the drugs to Redwine. At the very least, there would have arisen a

7

question as to who to believe. And, the jury could very well have rejected the comments of Ross and Casiano (the latter being someone who attempted to help Redwine buy drugs in a separate drug transaction also involving appellant) and found White credible (assuming, of course, that White would have testified to his involvement in a drug transaction and relinquished his right against self-incrimination).

As to the failure of trial counsel to conduct a reasonable investigation, discover the existence of Ross and Casiano, and present them as witnesses, we note that material questions exist regarding the beneficiality of their testimony. For instance, in attempting to clear appellant, Casiano described how appellant ultimately helped Redwine search for drugs and eventually acquired marijuana for him. Moreover, this particular escapade was also captured on tape, which tape was admitted into evidence at the hearing on the motion for new trial.

As required by our Court of Criminal Appeals, one claiming ineffective assistance of counsel must establish not only that his counsel was deficient but also that the deficiency was prejudicial. *Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). And, to be prejudicial, the record must permit the court to find that there exists a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* We are at a loss to see how testimony purporting to exculpate appellant *viz* one criminal accusation by inculpating him in another similar transaction achieves the required end. This is especially so given the tape recording of the initial drug transaction wherein appellant is acknowledged to be present by both Redwine and White, and appellant is heard on the tape uttering words evincing a drug deal. In short, we cannot say that the trial court somehow erred in rejecting the contention that Casiano's testimony undermined

confidence in the outcome of the trial and, therefore, created a reasonable probability that the outcome would have differed had he testified. The same can also be said of Ross.

Ross testified, by an unsworn affidavit, how White purportedly sold the cocaine rocks to appellant. Yet, in so testifying, he also provided evidence corroborating various details of the drug transaction for which appellant was convicted. For instance, he placed the drug buy at appellant's house and confirms that Redwine paid $400 for multiple rocks of cocaine. These are the very details captured on tape, which tape both inculpates White as (at the very least) a party to the transaction and appellant as a party if not the actual seller. Given these circumstances, we cannot but conclude that evidence supports the trial court's implicit finding that Ross' testimony, if discovered, did not create a reasonable probability that the outcome would have differed.

### Issues Seven and Eight - Extraneous Offenses

In issues seven and eight, appellant complains of a statement made by Kim Arnold and his counsel's failure to object to the statement. The testimony was purportedly inadmissible, and because his counsel did not object to it, he rendered ineffective assistance. We overrule the issues.

The testimony at issue consisted of a reply by a State's witness to a question inquiring about the length of time the witness knew appellant. The witness said: "Oh, back since '92, when I first went to work for the police department." Appellant contends that this statement was inadmissible because it "had no probative value and constructively introduced other bad acts or extraneous offense[s] in the presence of the jury." No explanation, analysis or citation to authority was provided in support of appellant's contention. Nor did appellant object to the testimony at trial. Given the latter circumstance,

9

he waived his complaint. TEX. R. EVID. 103(a)(1); *Cisneros v. State,* 692 S.W.2d 78, 82 (Tex. Crim. App. 1985).

As to the allegation of ineffective assistance arising from the failure to object, appellant did not attempt to illustrate how the utterance caused him harm. Again, that was an element to his claim, and the burden to prove it lay with him. *Bone v. State*, 77 S.W.3d at 828. Having not attempted to show prejudice, appellant did not carry his burden of proof. *Ladd v. State,* 3 S.W.3d 547, 570 (Tex. Crim. App. 1999).

Nor can we see how an objection to the utterance would have created a reasonable probability that the outcome would have differed. Again, the overwhelming evidence of appellant's guilt consisted not only of eyewitness testimony but also of a tape recording that captured the transaction. Given this and the rather innocuous nature of the comment, we cannot say that reversal was or is warranted due to counsel's silence.

### Issue Nine - Request for Expert

Finally, in his last issue, appellant argues the trial court erred in denying his request for the appointment of an expert to examine the authenticity of the recording wherein the drug sale was recorded. He contends that it may have been altered. We overrule the issue.

Appellant cites no authority in support of his contention that he was entitled to the appointment of an expert to analyze the tape. Thus, the issue is inadequately briefed and waived. TEX. R. APP. P. 38.1(h) (requiring the brief to contain appropriate citations to authorities and the record); *Cardenas v. State,* 30 S.W.3d 384, 393 (Tex. Crim. App. 2000).

10

Furthermore, a request for an expert cannot be made in a way or time that obstructs the orderly administration of justice. *Hammett v. State*, 578 S.W.2d 699, 707 (Tex. Crim. App. 1979). Thus, belatedly making the request can provide grounds for denying it. *See id.* (holding that to have granted the motion for an expert as presented and at the time filed would have constituted a real threat to the trial court's control of the proceeding); *accord*, *Stoker v. State*, 788 S.W.2d 1, 16-17 (Tex. Crim. App. 1989) (noting delay as an indicia supporting the decision to deny a request for the appointment of an expert). At bar, the request for an expert was not made until counsel for appellant finished his opening statement at the hearing upon the motion for new trial. The trial court did not act upon the request until defense counsel again broached the matter after the prosecutor "closed" the presentation of his evidence. At that point, the trial court denied the request. Given the belatedness of the motion, we cannot say that the trial court abused its discretion in overruling it, especially when nothing was said as to why the request came so late. As in *Hammett*, granting the motion at the time requested posed a legitimate threat to the court's control of the proceeding.

Finally, aside from the argument that the affidavits of Ross and Casiano conflicted with portions of the tape, no evidence of record suggests that the tape was altered. Indeed, the only testimony touching upon the subject evinced otherwise. Thus, appellant's request for an expert based upon his unsubstantiated belief that the recording may have been modified did not obligate the trial court to grant it. *See Williams v. State*, 958 S.W.2d 186, 192 (Tex. Crim. App. 1997) (stating that to obtain the assistance of an appointed expert requires more than undeveloped assertions that an expert would be helpful).

Having overruled each issue, we affirm the trial court's judgment.

11

Per Curiam

Publish.