Affirmed and Memorandum Opinion filed August 17, 2006








Affirmed and Memorandum Opinion filed August 17, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00713-CR

____________

 

EUSTACIO MARTINEZ ROBLES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 338th
District Court

Harris County, Texas

Trial Court Cause No. 999,665

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Eustacio Martinez Robles, appeals his conviction
for possession of a controlled substance, specifically cocaine weighing more
than 400 grams, with intent to deliver. See Tex. Health & Safety Code Ann. ' 481.112 (Vernon
2003). After pleading not guilty, appellant was found guilty by a jury.
Appellant=s conviction was enhanced by two prior felony
convictions, and the trial court sentenced appellant to twenty-five years= confinement in
the Institutional Division of the Texas Department of Criminal Justice. See
Tex. Pen. Code Ann. ' 12.42(d) (Vernon
2003). In two issues, appellant argues the evidence is legally and factually
insufficient to support the verdict. We affirm.








Factual and Procedural Background

As a result of a federal drug charge, Robert Montalvo
agreed to become a confidential informant working with Drug Enforcement
Administration Special Agent Dwayne Dodds. 

I.        The
Confidential Informant=s Testimony

Montalvo testified he first met appellant in a carpet store
in early 2004 when appellant sold Montalvo carpet to be used in a construction
project. While appellant installed the carpet, the two talked and Montalvo
informed appellant he had been arrested on a federal conspiracy charge.
Appellant then told Montalvo to give him a call if he ever wanted to buy
cocaine. As he was required to do, Montalvo notified Dodds about his
conversation with appellant. For reasons unknown to Montalvo, Dodds was not
able to pursue the lead at that time.

Montalvo contacted appellant in August 2004 to discuss the
purchase of two kilograms of cocaine. Montalvo recorded several of his
conversations with appellant, and tapes and transcripts of those conversations
were entered into evidence. Montalvo identified the voices on the recordings as
his and appellant=s. Montalvo testified that, as a result of
these conversations, appellant agreed to sell Montalvo=s buyer two
kilograms of cocaine for $16,300 per kilogram. In addition, Montalvo learned
that appellant=s supplier=s name was AFlaco@ and that
appellant had worked out with a reluctant Flaco that Montalvo and his buyer
would have an opportunity to inspect the drugs and get a sample before
finalizing the deal. 








On September 3, 2004, Montalvo called appellant at
approximately 10:00 a.m. to ask appellant if he was ready. Appellant said he
was, but he would have to call his supplier.  Appellant called Montalvo back
about five minutes later and they agreed to meet at a Pep Boys store. Montalvo
testified he and his vehicle were searched by officers involved in the
investigation, and no drugs were found. In addition, the officers gave Montalvo
a digital recorder. At the Pep Boys, appellant got in Montalvo=s vehicle, and
they drove to two different convenience stores. At the second convenience
store, Montalvo testified appellant received a call letting him know the
cocaine was there. Montalvo then drove to a house located at 7723 Morley.

Once at 7723 Morley, appellant knocked on the door and Noe
Mondragon answered the door. Appellant introduced Mondragon to Montalvo as
Flaco. Appellant and Mondragon spoke briefly in the living room, and Mondragon
went to another room and returned with a shopping bag containing two kilograms
of cocaine. They then conversed about the cocaine and its purity. Montalvo
testified the cocaine was wrapped in a brownish, clear tape.  According to
Montalvo, only Mondragon handled the cocaine. Montalvo also testified he told
Mondragon he needed a sample for his buyer to make certain that was what the
buyer wanted. Mondragon proceeded to cut into one of the containers of cocaine
and gave Montalvo a sample. Mondragon then cut open the second container to
show Mondragon that both containers were the same. As appellant and Montalvo
were preparing to leave, Mondragon told Montalvo that if he was not available,
then Montalvo would have to give the money to Esteban Alvarado, who had been
present in the living room the whole time. Montalvo told Mondragon they would
be back, and he and appellant left the house after spending only two or three
minutes inside.

Montalvo called Dodds and told him everything was good.
Montalvo drove with appellant to a nearby restaurant. At trial, Montalvo
identified State=s Exhibit 20 as the sample of cocaine
Mondragon had given him to show to his buyer. Montalvo testified he placed the
cocaine sample in an overhead console in his vehicle and left it there when he
and appellant went into the restaurant. Appellant and Montalvo ordered food and
waited in the restaurant.  Eventually, officers came and retrieved the cocaine
sample from Montalvo=s vehicle and detained appellant and
Montalvo.

II.       Other
Evidence








Special Agent Dodds testified that Montalvo informed him of
his conversation with appellant in early 2004, but he was not able to commence
an investigation involving appellant until August 2004. For that investigation,
Dodds instructed Montalvo to tell appellant he had a prospective buyer who
wanted to buy kilogram quantities of cocaine. Dodds testified he always
directed Montalvo on what to do during investigations and Montalvo was supposed
to inform Dodds about any conversations he had regarding drug trafficking.
Dodds further instructed Montalvo to document his conversations with appellant
and attempt to record any conversations they had regarding the purchase of
cocaine. Towards that end, Dodds provided Montalvo with a recorder and tapes.
According to Dodds, Montalvo also purchased his own digital recorder and used
it during the investigation.

In August 2004, Montalvo and Dodds began their effort to
purchase two kilograms of cocaine from appellant. Dodds testified the plan was
for Montalvo to act as a broker by telling appellant someone from out of town
would be purchasing two kilograms of cocaine, and he would need a sample to
take to the prospective buyer. Montalvo would then deliver the sample to the
investigating officers who would obtain a search warrant, execute the search
warrant, obtain the cocaine, and arrest anyone involved in the transaction.

On September 2, 2004, Dodds observed Montalvo meet
appellant at a Home Depot to make final arrangements for the two-kilogram
purchase scheduled for the next day.  Dodds testified Montalvo was wired for
the meeting, the recording device worked, and Dodds turned the tape over to
Department of Public Safety Sergeant Renard Brown, who misplaced it. Brown
testified Montalvo was to meet appellant the next day and go to an individual=s house where they
would inspect the two kilograms of cocaine. The seller would give Montalvo a
sample, who would then bring it to the buyer so he could make a decision
whether he would buy the two kilograms of cocaine. Montalvo told Dodds the
price would be $16,300 per kilogram.








Montalvo had agreed to meet appellant at a Pep Boys store
on September 3, 2004, at 11:00 a.m. At 10:30 a.m., officers working with Dodds
searched Montalvo and his vehicle to make certain he did not possess any
cocaine. The officers also equipped Montalvo with a digital recorder, but it
turned out later the recorder was inoperable as it had no batteries. Dodds had
arranged for numerous law enforcement officers to participate in the
investigation to maintain surveillance on Montalvo and appellant. At
approximately eleven o=clock, Dodds observed Montalvo arrive at
the Pep Boys parking lot and saw appellant enter Montalvo=s vehicle.
Montalvo then drove to a nearby convenience store, which both Montalvo and
appellant entered. Montalvo exited the store and called Dodds while appellant
remained inside. Montalvo told Dodds they were going to have to travel to the
seller=s residence to
obtain the cocaine. Montalvo then drove to a second convenience store with
appellant.

At approximately 11:55 a.m., Dodds and the surveillance
officers observed Montalvo and appellant exit the second convenience store and
drive directly to a house located at 7723 Morley. Dodds observed Montalvo and
appellant enter the 7723 Morley residence. After only two to three minutes,
Dodds observed Montalvo and appellant exit the house and drive away in Montalvo=s vehicle. Several
officers followed Montalvo=s vehicle while Dodds and other officers
remained watching the 7723 Morley residence. Montalvo had been instructed that
once he had the sample, he was to drive with appellant to a nearby restaurant
and wait while the officers obtained and executed a search warrant for the
residence and made the arrest. While in transit to the restaurant, Montalvo
called Dodds and told him he had the sample, the two kilograms of cocaine were
there, and he needed to go and get the money.  At that point, Dodds relayed
that information to Sergeant Brown, who sought a search warrant based upon that
information. Dodds and the other officers maintained surveillance of the 7723
Morley residence, as well as Montalvo and appellant at the restaurant.

While waiting for the search warrant, Dodds observed Sergio
Escobar leave the 7723 Morley residence and walk across the street to 7734
Morley. Escobar then drove a vehicle from the 7734 Morley residence back to the
7723 Morley driveway. A few minutes later, Mondragon and an infant exited the
residence at 7723 Morley, entered the vehicle and Escobar drove off. A police
car stopped the vehicle, and after making a consensual search, they found no
narcotics. The officers detained Escobar and Mondragon until they were able to
execute the search warrant.








 As the judge was unavailable, it took Sergeant Brown
almost two hours to obtain the search warrant. Because of the delay and the
chance that appellant would become suspicious, the decision was made to go
ahead and detain appellant. At that time, Special Agent Keith Jones retrieved
the cocaine sample from Montalvo=s vehicle, which
he eventually turned over to Dodds. Soon after appellant was detained, Sergeant
Brown informed Dodds the search warrant had been obtained. At that point, the
officers executed the search warrant at 7723 Morley. The officers found
Alvarado in the living room of the house and two kilograms of cocaine in a
shopping bag under a bed in one of the bedrooms. Montalvo was brought back to
the 7723 Morley residence where he identified Mondragon, but stated he did not
know and had not seen Escobar. Charges were accepted against appellant and
Mondragon. The others detained during the investigation were released.

The cocaine found at the 7723 Morley residence and in
Montalvo=s vehicle were
entered into evidence as State=s Exhibits 4 and 20, respectively. Pauline
Orlando, forensic chemist with the Drug Enforcement Administration, South
Central Laboratory, testified State=s Exhibits 4 and
20 each contained a controlled substance, specifically cocaine. Orlando also
testified State=s Exhibit 4 weighed 1,947 grams while
State=s Exhibit 20
weighed less than one gram. Finally, Orlando testified State=s Exhibits 4 and
20 had a purity of eighty-five percent. Dodds testified the cocaine was
packaged for wholesale delivery, that it could be diluted three or more times,
and it had a street value between $13,500 and $17,000. 








Appellant was charged by indictment with the felony offense
of knowing possession with intent to deliver a controlled substance, namely,
cocaine, weighing at least 400 grams by aggregate weight, including any
adulterants and dilutants, enhanced with two prior felony convictions.
Appellant entered a plea of Anot guilty.@ The jury was
instructed on the law of parties. Tex.
Pen. Code Ann. '' 7.01(a), 7.02(a)(2) (Vernon 2003).[1]
The jury found appellant guilty as charged. Appellant entered a plea of true to
each of the enhancement paragraphs. The trial court found the allegations in
both enhancement paragraphs true and sentenced appellant to twenty-five years= confinement in
the Institutional Division of the Texas Department of Corrections. This appeal
followed.

Discussion

I.        Is the
Evidence Sufficient to Convict Appellant?

In his first issue, appellant argues the evidence is
legally and factually insufficient to support his conviction. Specifically,
appellant argues the evidence is insufficient as there was no proof appellant
ever directly possessed the cocaine. In addition, appellant asserts he could
not have been found guilty as a party since the jury acquitted appellant=s co-defendant. We
disagree.

A.      Legal
Sufficiency Standard of Review

When reviewing a challenge to legal sufficiency, we view
the evidence in the light most favorable to the verdict and determine whether a
rational trier of fact could have found the elements of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318B19, 99 S. Ct.
2781, 2788B89 (1979); Cardenas v. State, 30 S.W.3d
384, 389 (Tex. Crim. App.  2000). The critical inquiry is whether, after so
viewing the evidence, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. McDuff v. State, 939
S.W.2d 607, 614 (Tex. Crim. App. 1997). This standard gives full play to the
responsibility of the trier of fact to resolve any conflicts in the testimony,
to weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.








B.      The
Evidence Is Legally Sufficient to Convict Appellant

The principle is well established that when the jury
returns a general verdict and the evidence is sufficient to support a guilty
finding under any of the allegations submitted, the verdict will be upheld. Rabbani
v. State, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992); Fuller v. State,
827 S.W.2d 919, 931 (Tex. Crim. App. 1992). In this case, the trial court
instructed the jury on the law of parties. The jury returned a general verdict
finding the appellant guilty of possession with intent to deliver a controlled
substance, namely cocaine, weighing at least 400 grams, including any
adulterants or dilutants, as charged in the indictment.

A person is criminally responsible as a party to an offense
if the offense is committed by his own conduct, by the conduct of another for
which he is criminally responsible, or both. Tex.
Pen. Code Ann. ' 7.01(a). Each party to an offense may be
charged with commission of the offense. Tex.
Pen. Code Ann. ' 7.01(b) (Vernon 2003). Evidence is
legally sufficient to support a conviction under the law of parties where the
actor is physically present at the commission of the offense, and encourages
the commission of the offense either by words or other agreement. Burdine v.
State, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986). The evidence must show
that, at the time of the offense, the parties were acting together, each
contributing some part towards the execution of their common purpose. Id.
In determining whether a defendant participated in an offense as a party, the
court may examine the events occurring before, during, and after the commission
of the offense, and may rely on actions of the defendant which show an
understanding and common design to commit the offense. Id.  In addition,
participation in an enterprise may be inferred from the circumstances and need
not be shown by direct evidence. Beardsley v. State, 738 S.W.2d 681, 684
(Tex. Crim. App. 1987). It is not necessary that every fact point directly and
independently to the defendant=s guilt; it is enough if the conclusion is
warranted by the combined and cumulative force of all the incriminating
circumstances. Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App.
1993).








Appellant claims the evidence is legally insufficient to
establish possession. APossession@ means actual
care, custody, control, or management. Tex.
Health & Safety Code Ann. ' 481.002(38)
(Vernon Supp. 2005). The evidence reflects that once appellant and Montalvo
were inside the 7723 Morley residence, Mondragon went into another room
and returned with a bag containing two kilograms of cocaine. Mondragon opened
both kilograms to show Montalvo the contents were the same and cut into one of
the kilograms of cocaine and gave Montalvo a sample. In addition, the evidence
establishes that: (1) appellant initially told Montalvo to contact him if he
needed any cocaine; (2) once Montalvo contacted appellant about buying cocaine,
appellant negotiated with Montalvo for delivery of two kilograms of cocaine
priced at $16,300 per kilogram; (3) appellant indicated to Montalvo appellant
needed to see Mondragon to arrange for the sale of the cocaine; (4) appellant
told Montalvo he had made the contact and arranged the deal with a reluctant
Mondragon; (5) appellant directed and accompanied Montalvo to Mondragon=s residence where
the cocaine was located; (6) appellant was present when Mondragon brought out
for inspection the two kilograms of cocaine and gave Montalvo a sample to take
to his buyer;  and (7) appellant traveled with Montalvo to a nearby restaurant
and waited for two hours with Montalvo for the buyer to bring the money.
Therefore, appellant was present when Mondragon possessed the cocaine. In
addition, appellant actively solicited, encouraged, directed, aided, and
attempted to aid Mondragon in possessing the cocaine for the purpose of selling
it.

After viewing the evidence in the light most favorable to
the prosecution, it is clear that a rational trier of fact could have found
beyond a reasonable doubt the elements of the offense, including the
requirement that appellant possessed at least four hundred grams of cocaine
with the intent to deliver.  

C.      Factual
Sufficiency Standard of Review








When evaluating a challenge to the factual sufficiency of
the evidence, we review all of the evidence in a neutral light and inquire
whether the jury was rationally justified in finding guilt beyond a reasonable
doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App.
2004). The evidence may be factually insufficient in two ways: (1) the evidence
is so weak that the verdict is clearly wrong and manifestly unjust; or (2) when
balanced against the evidence supporting the verdict, the contrary evidence may
be so strong the beyond-a-reasonable-doubt standard could not have been met. Prible
v. State, 175 S.W.23d 724, 730B31 (Tex. Crim.
App. 2005), cert. denied, 126 S. Ct 481, 163 L. Ed.2d 367. In conducting
the factual sufficiency review, we must employ appropriate deference so we do
not substitute our judgment for that of the fact finder. Zuniga, 144
S.W.3d at 481B82. Our evaluation should not intrude upon the fact
finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony. Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). A decision is not
manifestly unjust merely because the jury resolved conflicting views of the
evidence in favor of the State. Id. at 410. In conducting a factual
sufficiency review, we must discuss the evidence appellant claims is most
important in allegedly undermining the jury=s verdict. Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

D.      The
Evidence is Factually Sufficient to Convict Appellant

While appellant admits his function was to bring Montalvo
together with the seller of the cocaine, appellant asserts the evidence was too
weak to prove possession beyond a reasonable doubt.[2]
In his argument, appellant emphasizes he was a guest at the 7723 Morley
residence, the lack of any fingerprint evidence connecting him with the
cocaine, and Montalvo=s testimony that only Mondragon handled
the cocaine. We disagree that the evidence is factually insufficient.








The jury is the sole judge of the facts, the credibility of
the witnesses, and the weight to be given the evidence. Wyatt v. State,
23 S.W.3d 18, 30 (Tex. Crim. App. 2000); Beckham v. State, 29
S.W.3d 148, 151B52 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d). In addition, the jury may believe or
disbelieve all or part of any witness=s testimony. Jones
v. State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). Reconciliation
of any conflicts in the evidence falls within the exclusive province of the
jury. Heiselbetz v. State, 906 S.W.2d 500, 504 (Tex. Crim. App.
1995). Thus, the jury was entitled to find that Montalvo, a confidential
informant with possibly selfish interests and corrupt motives, was telling the
truth. Cantelon v. State, 85 S.W.3d 457, 462 (Tex. App.CAustin 2002, no
pet.).

We have reviewed the record for evidence supporting the
guilty verdict, including the evidence addressing possession of the cocaine
with intent to deliver. This evidence, set out in the Factual and Procedural
Background section above, when viewed in a neutral light and standing by
itself, is not so weak that the verdict is clearly wrong and manifestly unjust.
See Prible, 175 S.W.23d at 730B31; Zuniga,
144 S.W.3d at 484B85. In addition, having reviewed the
entire record, we cannot say the evidence contrary to the verdict, including
the evidence pointed out by appellant, is so overwhelming that the
beyond-a-reasonable-doubt standard could not have been met. See Zuniga,
144 S.W.3d at 484B85.  

E.      The
Acquittal of Appellant=s Co-Defendant

Appellant argues the evidence is insufficient as the jury
acquitted his co-defendant. Appellant asserts the verdicts are inconsistent and
conflicting, and therefore, his conviction should be reversed. In addition,
appellant argues section 7.03 of the Texas Penal Code does not control this
situation as, in appellant=s view, it only applies when a defendant
has been acquitted in a separate trial. We disagree.

Section 7.03 of the Texas Penal Code states:

In a prosecution in which an actor=s criminal responsibility is based
on the conduct of another, the actor may be convicted on proof of commission of
the offense and that he was a party to its commission, and it is no defense:

. . . .








(2) that the person for whose conduct the actor is
criminally responsible has been acquitted, has not been prosecuted or
convicted, has been convicted of a different offense or of a different type or
class of offense, or is immune from prosecution.

 

Tex. Penal Code Ann. ' 7.03 (Vernon
2003). Despite appellant=s assertion, there is no language limiting
the impact of section 7.03 to cases where the primary actor was tried and
acquitted in a separate trial. By its plain language, section 7.03 applies to
all prosecutions, including one like appellant=s, where he was
tried jointly with Mondragon, and appellant was convicted and Mondragon was
acquitted. See Ex parte Evans, 964 S.W.2d 643, 646 (Tex. Crim. App.
1998) (holding when a statute is clear and unambiguous, a reviewing court
applies the plain meaning of the statute=s words).
Accordingly, the fact Mondragon was acquitted has no impact on appellant=s conviction.

Appellant=s argument rests on the assumption that
Mondragon=s acquittal must be of some benefit to him. This is
not the case. Inconsistency in a verdict is not a sufficient reason for setting
the verdict aside. United States v. Dotterich, 320 U.S. 277, 279, 64 S.
Ct. 134, 135 (1943); Dunn v. United States, 284 U.S. 390, 393, 52 S. Ct.
189, 190 (1932). When there are apparently inconsistent verdicts, the appellate
inquiry is limited to a determination of whether the evidence is legally
sufficient to support the jury=s verdict. Lockett v. State, No.
14-03-00601-CR, 2004 WL 3202864, at *2 (Tex. App.CHouston [14th
Dist.]  Nov. 24, 2004, no pet.) (not designated for publication). We already
have determined the evidence is legally sufficient to support appellant=s conviction;
therefore, appellant=s argument that Mondragon=s acquittal
requires reversal of his conviction is without merit.

As the evidence is legally and factually sufficient to
support appellant=s conviction, we overrule appellant=s first issue.

 








II.       Did
Independent Evidence Corroborate the Confidential Informant=s Testimony?

In his second issue, appellant argues the evidence is
legally insufficient because there is  no evidence corroborating Montalvo=s testimony
connecting appellant to the offense. We disagree.

A.      The
Corroboration Requirement

The trial court instructed the jury Montalvo was a
confidential informant. A defendant may not be convicted of an offense under
Chapter 481 of the Health and Safety Code on the testimony of a person who is
not a licensed peace officer or a special investigator, but who is acting
covertly on behalf of a law enforcement agency or under the color of law
enforcement unless the testimony is corroborated by other evidence tending to
connect the defendant with the offense committed. Tex. Code Crim. Proc. Ann. art. 38.141 (Vernon 2005). The
language in Article 38.141 is similar to the language found in Texas Code of
Criminal Procedure Article 38.14, which requires corroboration of accomplice
testimony, and this standard has been adopted by other intermediate courts of
appeal in applying Article 38.141. See Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005); Brown v. State,
159 S.W.3d 703, 707 (Tex. App.CTexarkana 2004, pet. ref=d), cert. denied,
125 S. Ct. 485 (2005); Torres v. State, 137 S.W.3d 191, 195B96 (Tex. App.CHouston [1st
Dist.] 2004, no pet.); Jefferson v. State, 99 S.W.3d 790, 792B93 (Tex. App.CEastland 2003,
pet. ref=d); Cantelon,
85 S.W.3d at 459B61. We find the case law interpreting
Article 38.14 persuasive and determine that it should be applied to Article
38.141.[3]









The Court of Criminal Appeals, in interpreting Article
38.14, has held it is not necessary that the corroborating evidence directly
connect the defendant to the crime or it be sufficient by itself to establish
guilt; the corroborating evidence need only tend to connect the defendant to
the offense. Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999);
McDuff v. State, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997). If the
combined weight of the non-accomplice evidence tends to connect the defendant
to the offense, the requirement of Article 38.14 has been fulfilled. Cathey,
992 S.W.2d at 462. The test for sufficient corroboration is to eliminate from
consideration the accomplice testimony and then examine the other inculpatory
evidence to ascertain whether the remaining evidence tends to connect the
defendant with the offense. McDuff, 939 S.W.2d at 612.

The covert witness rule, Article 38.141, also requires
there be some other evidence, which tends to connect the defendant to the
commission of the offense alleged in the indictment. Brown, 159 S.W.3d
at 707B08; Dennis v.
State, 151 S.W.3d 745, 749 (Tex. App.CAmarillo 2004 pet.
ref=d); Torres,
137 S.W.3d at 196. Even apparently insignificant incriminating circumstances
may sometimes provide sufficient corroboration. Brown, 159 S.W.3d at
708. Cumulative evidence of suspicious circumstances can be sufficient
evidence  that tends to connect a defendant to the alleged offense, even if
none of the circumstances would be sufficient individually. Id. In
determining whether there is other evidence that tends to connect the defendant
with the offense, a reviewing court must eliminate all covert witness testimony
and determine whether the remaining inculpatory facts and circumstances tend to
connect the defendant with the offense. Brown, 159 S.W.3d at 708;
Dennis, 151 S.W.3d at 749; Torres, 137 S.W.3d at 196; Cantelon,
85 S.W.3d at 461.

B.      The
Corroborating Evidence








  Other evidence, independent of Montalvo=s testimony, tends
to connect appellant with possession of the cocaine. Appellant was in Montalvo=s company before,
during, and after the offense. Officers conducted surveillance of appellant and
observed him meet Montalvo at Home Depot at the designated time and place.
Officers also observed appellant in the company of Montalvo as they met at Pep
Boys at the designated time and place, traveled to two convenience stores and
then to the 7723 Morley residence. The officers also observed appellant and
Montalvo enter the 7723 Morley residence together and exit together after
spending only a few minutes inside. Finally, officers observed appellant and
Montalvo travel together to a restaurant and wait for more than two hours.
Evidence that a defendant was present in the company of the confidential
informant before, during, and after the commission of an offense, coupled with
other suspicious circumstances, may tend to connect the defendant to the
offense. Torres, 137 S.W.3d at 196. In addition, evidence the defendant
was at or near the scene of a crime at or near the time of its commission,
coupled with other suspicious circumstances, may be sufficient to tend to
connect the defendant to the offense. Brown, 159 S.W.3d at 708.

Officers recovered two kilograms of cocaine from 7723
Morley, which was consistent with the quantity of cocaine for which appellant
and Montalvo had negotiated, was consistent with the quantity of cocaine
Mondragon was to deliver, was consistent with the quantity Montalvo testified
Mondragon showed him inside the 7723 Morley residence, was consistent in purity
with the cocaine sample Mondragon delivered to Montalvo, which officers
recovered from Montalvo=s vehicle.








Before Montalvo met with appellant on the morning of the
offense, officers searched Montalvo and his vehicle and determined there was no
cocaine inside the vehicle or on Montalvo=s person. After
the offense, officers found a small quantity of cocaine inside Montalvo=s vehicle, which
was consistent with Montalvo=s testimony appellant and Mondragon
delivered a small sample of cocaine to Montalvo while he and appellant were
inside the 7723 Morley residence. See Dennis, 151 S.W.3d at 749 (officer
searched informant and informant=s vehicle before
the offense and found no contraband and informant delivered cocaine to the
officer upon returning from transaction); Jefferson, 99 S.W.3d at 792
(officer searched informant before going into house and found no contraband and
informant delivered cocaine to officer upon returning from house).[4]

The cumulative effect of the evidence, independent of
Montalvo=s testimony, tends
to connect appellant to the charged offense and is sufficient to corroborate
Montalvo=s testimony as
required by article 38.141. See Tex.
Code Crim. Proc. Ann. art. 38.141. Accordingly, we overrule appellant=s second issue.

Conclusion

Having overruled both of appellant=s issues on
appeal, we affirm the judgment of the trial court.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed August 17, 2006.

Panel consists of
Justices Anderson, Edelman, and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]   Texas Penal Code section 7.01(a) states: AA person is criminally responsible as a party to an
offense if the offense is committed by his own conduct, by the conduct of
another for which he is criminally responsible, or by both.@ Tex. Pen. Code
Ann. ' 7.01(a) (Vernon 2003).

 

Texas Penal Code section 7.02(a)(2)
states: AA person is criminally responsible for an offense
committed by the conduct of another if: . . . . acting with intent to promote
or assist the commission of the offense, he solicits, encourages, directs,
aids, or attempts to aid the other person to commit the offense.@ Tex. Pen. Code
Ann. ' 7.02(a)(2) (Vernon 2003).





[2]  In appellant=s
brief, there is a section wherein appellant affirmatively states he is relying
only on the second method in which the evidence may be factually insufficient.
However, this statement is found in  a section of the brief addressing whether
appellant should have anticipated a murder in the course of a robbery. As there
are no accusations of murder or robbery in this case, we will assume this
section was included in appellant=s
brief in error.





[3]  Appellant argues the corroborating evidence is
legally insufficient. As the corroboration of covert witness testimony is a
statutorily imposed requirement rather than one mandated by either the United
States or Texas constitutions, legal and factual sufficiency standards of
review are not applicable to a review of covert witness testimony under Article
38.141. Brown v.
State, 159 S.W.3d
703, 707 (Tex. App.CTexarkana 2004, pet. ref=d), cert. denied, 125 S. Ct. 485
(2005) (citing Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App.
1999)) (addressing the accomplice witness testimony corroboration statute); Torres
v. State, 137 S.W.3d 191, 195B96 (Tex. App.CHouston [1st Dist.] 2004, no pet.); Cantelon v. State,
85 S.W.3d 457, 460 (Tex. App.CAustin 2002, no pet.). 





[4]  The State argues audio tapes made by Montalvo
contained the voices of Montalvo and appellant discussing arrangements for the
transaction and therefore served as additional corroborating evidence. However,
appellant did not testify during the trial, and Special Agent Dodds testified
his knowledge the voice on the tapes in addition to Montalvo=s was appellant=s,
came exclusively from Montalvo. Therefore, the tapes and the transcripts of the
tapes must be disregarded for this analysis. Brown, 159 S.W.3d at 708; Dennis, 151 S.W.3d at 749; Torres,
137 S.W.3d at 196; Cantelon, 85 S.W.3d at 461.