COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



YOLLAND DOMETRIC LATIMER,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00379-CR



Appeal from the


291st District Court


of Dallas County, Texas


(TC# F-0455225-QU)



O P I N I O N


 Appellant Yolland Dometric Latimer appeals from his conviction for the capital murder of
Lois Fields ("Fields") and Darryl Sneed ("Sneed"). See Tex. Pen. Code Ann. §§ 19.02(b)(1),
19.03(a)(7)(A). (1) By a single issue, Appellant seeks to have his conviction reversed due to ineffective
assistance of counsel. We affirm.

FACTUAL BACKGROUND


 Fields, Sneed, and Appellant were all members of the same Narcotics Anonymous ("NA")
group. Prior to the incident, Appellant and Fields had become romantically involved and eventually
had a child together. At some point, the romantic relationship ended; however, Appellant and Fields
continued an "on again/off again" association. According to Fields' sister, Appellant saw his
daughter on a regular basis and also paid child support. Approximately three to four months before
her death, Fields began dating Sneed.

 On August 19, 2004, Appellant, Fields, and Sneed all attended a 6 p.m. NA meeting in
Dallas, although Appellant left the meeting early. After the meeting ended, Sneed and some of the
other NA members had planned to watch movies at his home. Sneed pulled his truck in front of the
building where the meeting was held in order to talk to Ozella Burnley ("Burnley") about a movie
she had mentioned that he wanted to rent. As Burnley approached the passenger side of Sneed's
truck, Appellant was already talking to him. The passenger-side window was rolled up, so she
waited for Sneed and Appellant to finish. As Burnley watched, Appellant pulled a gun and shot
Sneed three times. According to Burnley, she saw Sneed's body jerk and then his truck "just took
off" across the street and ran through a fence.

 Angela King ("King") also attended the NA meeting on the evening of August 19, but she
left the meeting early in order to go outside and smoke a cigarette. King was seated sideways in her
car with the car door open and her feet out when Sneed pulled his truck approximately two feet in
front of her car. King testified that she saw Appellant exit the building where the meeting was held
and walk to Sneed's truck. King stated that the two began arguing and, as she watched, Appellant
pulled a gun and shot Sneed "in his chest. And then after he did that, and I looked, and he shot him
again, and then he shot him again." Doctor Jeffrey Barnard ("Dr. Barnard"), Chief Medical
Examiner for Dallas County, testified that bullets pierced Sneed's head, chest, and underneath his
chin.

 Patricia Lee ("Lee") was another member of Appellant's NA group who attended the meeting
on August 19. She testified that during the meeting, someone came into the meeting room and said,
"everybody down." Lee attempted to get into a bathroom located next to the meeting room, but she
was unable to do so because Fields and another NA member, Melanie Porter ("Porter"), were already
inside. While she was outside of the bathroom, someone pushed Lee out of the way, knocking her
glasses off. After putting her glasses back on, Lee saw that Appellant had entered the bathroom and
was pointing a gun at Fields. According to Lee, Appellant shot Fields, and then his gun jammed. 
Appellant knelt down to "cock" the gun and, after doing so, placed the gun against Fields' head and
shot her again. After shooting Fields twice, Appellant left the bathroom and began pacing "back and
forth." Lee continued to watch Appellant and when he moved towards the bathroom again, she was
able to run out of the building.

 Porter was in the bathroom standing next to Fields when she was shot. According to Porter,
Fields received a cellular telephone call and stepped outside of the meeting room to talk. Fields then
came back to the meeting and asked Porter to talk with her. Porter and Fields called 9-1-1, and both
then returned to the meeting room. Sometime thereafter, Porter returned to the bathroom, but before
she could finish, she heard a "commotion" outside. Fields then ran into the bathroom, pleading for
help.

 Appellant followed Fields into the bathroom and shot her in front of Porter. Appellant then
pushed Fields and shot her again in the back of her head. According to Lee, Porter and Fields were
"shoulder to shoulder" in the bathroom when Fields was shot. After Appellant shot Fields a second
time, he left. Fields fell to the floor and yelled for Porter to help her. Shortly after leaving the
bathroom, Appellant returned and placed the gun to the back of Fields' head and shot her again. 
Porter pleaded with Appellant not to shoot her and he did not, fleeing the scene instead. Dr. Barnard
testified that Fields sustained multiple injuries as a result of the shooting, including injuries to her
face, head, forearm, and left index finger. (2)

 On the same evening, Dallas Police Officer Albert Martinez was dispatched to a residential
location on a suicide call approximately one mile from where the shooting of Fields and Sneed
occurred. According to Officer Martinez, the dispatcher indicated that the Dallas Fire Department
was requesting assistance, because the individual at the location was armed. Officer Martinez
walked into the yard and drew his weapon. He stated that he saw Appellant who was "extremely
agitated" and was yelling at his brother. Other officers began to talk to Appellant, so Officer
Martinez withdrew in order to set up a perimeter and coordinate communications. Officer Martinez
testified that, before he left the area, he overheard Appellant say, "I killed them."

 Officer Jose Aranda was also dispatched to the residential location. Upon arrival, Officer
Aranda began to talk to Appellant. Officer Aranda indicated that, during their conversation,
Appellant stated that "I shot both of them bitches three times in the head each. I can't do no time
for capital murder." According to Officer Aranda, Appellant then asked him whether the victims
had died, and Aranda replied that he did not know. After Officer Aranda talked to Appellant for
approximately twenty minutes, he was relieved by officers from the SWAT unit.

 After a stand-off lasting several hours, officers from the SWAT unit were able to place
Appellant under arrest. Appellant was indicted for capital murder, and he pleaded not guilty. After
a trial on the merits, a jury found him guilty and that he used or exhibited a deadly weapon during
the commission of the offense. The trial court then imposed the mandatory sentence of life
imprisonment in the Institutional Division of the Texas Department of Criminal Justice. See Tex.
Code Crim. Proc. Ann. art. 37.071. Appellant filed his notice of appeal and the trial court certified
his right of appeal.

STANDARD OF REVIEW


 We review claims of ineffective assistance of counsel under the two-prong test set out by the
United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). See Tong v. State,
25 S.W.3d 707, 712 (Tex. Crim. App. 2000). To prevail on an ineffective assistance claim, an
appellant must first show that counsel's performance was deficient, that is, that counsel's
representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688; Tong,
25 S.W.3d at 712. In addition, the appellant must show that counsel's deficient performance
prejudiced his defense. Strickland, 466 U.S. at 687; Tong, 25 S.W.3d at 712. This requires the
appellant to show that there is a reasonable probability that, but for counsel's unprofessional errors,
the result of the proceeding would have been different. Strickland, 466 U.S. at 694; Tong, 25
S.W.3d at 712. A reasonable probability is a probability (3) sufficient to undermine confidence in the
outcome. Strickland, 466 U.S. at 694; Tong, 25 S.W.3d at 712.

 In reviewing claims of ineffective assistance, we indulge a strong presumption that counsel's
conduct falls within the wide range of reasonable professional assistance. Tong, 25 S.W.3d at 712. 
To prevail, an appellant must rebut the presumption that the challenged conduct might be considered
sound trial strategy. Id. Without evidence of the strategy involved concerning counsel's actions at
trial, the reviewing court will presume sound trial strategy. Rylander v. State, 101 S.W.3d 107, 111
(Tex. Crim. App. 2003). Ultimately, the appellant bears the burden of proving ineffective assistance
by a preponderance of the evidence. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999);
Bradley v. State, 960 S.W.2d 791, 804 (Tex. App.--El Paso 1997, pet. ref'd).

 Any allegation of ineffectiveness must be firmly founded and affirmatively demonstrated in
the record. Thompson, 9 S.W.3d at 813. In the majority of instances, an appellant cannot rebut the
presumption of reasonable assistance, because the record on direct appeal is simply undeveloped and
does not adequately reflect any failings of trial counsel. Id. at 813-14. A silent record that provides
no explanation for counsel's actions will not ordinarily overcome the strong presumption of
reasonable assistance. See Rylander, 101 S.W.3d at 110-11. Indeed, an appellate court should not
declare trial counsel ineffective without a record showing counsel had some opportunity to explain,
absent conduct "so outrageous that no competent attorney would have engaged in it." Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing Garcia v. State, 57 S.W.3d 436, 440
(Tex. Crim. App. 2001)).

DISCUSSION


 In less than one page of argument, Appellant contends he was denied effective assistance of
counsel as a result of his trial counsel's actions and inactions. Specifically, Appellant bases his
assertion that trial counsel was ineffective on counsel's: (1) making "very few objections;" (2) not
presenting mitigation evidence from more than one witness; (3) failing to present witnesses to
confirm that Appellant and Fields had discussed marriage and buying an engagement ring before the
incident; (4) failing to present expert testimony from a psychologist or psychiatrist to explain
Appellant's behavior; and (5) failing to request a charge on any lesser-included offenses.

 Initially, we note that thirteen pages of Appellant's fourteen and one-half-page brief in this
Court consists of a statement of facts. Appellant cites to no authority and makes no attempt at
substantive analysis, but simply concludes that trial counsel's performance was ineffective. A brief
lacking substantive analysis is inadequate and presents nothing for review. See Tex. R. App. P.
38.1(h); see also Walder v. State, 85 S.W.3d 824, 828-29 (Tex. App.--Waco 2002, no pet.). 
Regardless, although Appellant filed a motion for new trial alleging ineffective assistance of counsel,
we have no record of a hearing. Thus, we have no explanation for counsel's actions. In the absence
of a record identifying what trial counsel's reasons may have been for pursuing a chosen course, we
presume the actions were part of sound trial strategy. Garcia, 57 S.W.3d at 440. Because we are
unable to conclude that counsel's performance fell below an objective standard, Appellant has failed
to satisfy the first prong of Strickland. We need not address both components of the inquiry, if the
defendant makes an insufficient showing on one component of the Strickland analysis. Strickland,
466 U.S. at 697; Rylander, 101 S.W.3d at 110.

 Even if we were to conclude that counsel's performance was deficient, Appellant has not
demonstrated any prejudice. Appellant simply states that "but for counsel's errors, the result of the
proceeding would have differed." Again, Appellant does not provide any substantive analysis or
citation to legal authority in support of this bald assertion. Thus, he has failed to carry his burden. 
Dennis v. State, 151 S.W.3d 745, 752 (Tex. App.--Amarillo 2004, pet. ref'd); see also Walder, 85
S.W.3d at 828-29. In any event, Appellant does not indicate what trial counsel might have done
differently and how it may have affected the outcome of his case. Given the overwhelming and
uncontroverted evidence against Appellant, we cannot say that, but for the alleged errors of counsel,
the result of the trial would have been different. Accordingly, Appellant's sole issue is overruled.


 We affirm the trial court's judgment.


 KENNETH R. CARR, Justice


April 19, 2007


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. A person commits capital murder, if he intentionally or knowingly causes the death of an individual and
murders more than one person during the same criminal transaction.
2. During direct testimony, Dr. Barnard indicated that some of the injuries may have been defensive in nature. 
In addition, Dr. Barnard admitted on cross-examination that, although Fields sustained five separate injuries, it was
difficult to determine how many times Fields was actually shot.
3. Without attempting to quantify what constitutes a "reasonable probability," we note that, by definition, a
"probability" means that it is more likely than not that "effective" counsel would have resulted in a different outcome.