

NUMBER 13-08-00021-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

REGINALD GUILLORY,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

**On appeal from the County Court at Law
of Liberty County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela
Memorandum Opinion by Justice Vela**

Appellant, Reginald Guillory, was charged by information with assault-family violence, a class A misdemeanor. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b) (Vernon Supp. 2008). After a bench trial, the trial court found Guillory guilty and assessed punishment at 180 days in jail. In four issues, Guillory argues: (1) he received ineffective assistance of counsel; (2) the evidence was legally and factually insufficient to support his

conviction; and (3) the trial court abused its discretion in denying him a meaningful hearing on his pro se motion for new trial. We affirm.

## I. Factual Background

*A. State's Evidence*

Reginald Guillory lived with his mother, Jackie Simon, in Ames, Texas. On July 25, 2007, while Simon was at work, Guillory put boxes in Simon's house, moved her furniture around, and took things off of the walls. He was trying to "move things out" so his son could move into the house. When Simon came home, she found her house in a "mess," and she and Guillory began to argue. When she turned around to hang a picture, she felt something hit the back of her head. She felt pain and heard her head "crack." She fell onto a table and hit her head. Shaking her head, she tried to get up and saw a candle on the living room floor. She did not see what had hit her; however, she testified that she was struck on her head by the candle. She asked Guillory why he had hit her with the candle, but he did not answer. She got an icepick from her bedroom, and when she left her bedroom, she saw Guillory sitting in a chair. She told him to get out of the house and that if he hit her again, she was going to give him "some bodily injury." After telling him this, she stuck the icepick into the chair. When he still refused to leave, she went to the parole office and told her son's parole officer about the assault.

Simon sought medical attention for her injury and testified that she had a concussion to the left side of her head and a hematoma to the back of her head. When the prosecutor asked her, "Now have you suffered any type of symptoms since being struck with [the candle] that you were not suffering prior to being hit?", she said she had headaches, swelling to her head, and pressure to the back of her head that "falls on my shoulder. . . ." She takes migraine headache pills four times a day and additional pain pills

2

for her headaches as necessary.  She testified that at the time of the assault, she and Guillory were the only people in the house.

On cross-examination, Simon testified that the injuries to her head were not caused by a prior assault perpetrated by her husband.  When asked how she knew Guillory threw the candle at her, she said, "There wasn't nobody else in there but Reginald [appellant]." When asked "[h]ow do you know he threw the candle?", she responded:  "Because it was right in front where I had it on my bar like I have all my other candles up there and that is the candle that he picked up to strike me with" and that "[i]t fell to the floor when he hit me, I caught my head and I heard it crack.  I saw the candle on the floor and I fell."  Defense counsel questioned her further by asking, "How do you know he hit you with that candle? You did not see it coming.  How do you know it wasn't one of the cups or plates on the floor?  You don't."  She replied, "It wasn't any cups or plates sir in the living room on the floor.  They were in the kitchen area. . . ."  Picking up the candle, defense counsel asked her, "Can you say with absolute certainty that this thing was thrown at you?"  She answered affirmatively.

*B. Defense Evidence*

Officer Tommy Koen with the Liberty County Sheriff's Department spoke to Simon about the assault on the date it occurred.  He testified that Simon told him her son had assaulted her.  Officer Koen saw no injury to her head; however, when he touched the area where she said she had been hit, she "hollered" and said it hurt.  Officer Koen testified that he saw what "appeared to be wax off a candle" in Simon's hair.  When defense counsel asked him, "You said there was . . . a white waxy substance in her hair?", he replied:  "Yes sir, there was a substance there in the area that she showed me that she had been hit with the candle . . . .  There was some white flaky stuff substance there."  Defense counsel

3

showed him the candle that was allegedly used to hit Simon and asked him, "See that dent in the candle right there? . . . You think that would be made from a skull?  To this, Officer Koen replied:  there "is a tall statue there [in the house].  It had a small round, I don't know if it was a head or what on the statue, that the candle hit and there seemed to be some white waxy substance on top of it that seemed to fit the gouge in the candle."

On cross-examination, the prosecutor asked officer Koen:  "The material that you found, you noticed in the hair of Ms. Simon, was that consistent with the color and texture of State's Exhibit 2?"[1]  He replied, "Yes it was."

Guillory denied hitting his mother on her head with a candle and said he did not know how the candle became dented.  He said the candle was on the counter in the house.  Guillory testified that when he refused to leave the house, Simon "picked the phone out of the thing and threw it, through where the bar part is.  So I don't know if the candle fell cause I didn't pay attention to the candle."  He further testified she swung the icepick at him four or five times, put it to his throat, and threatened to kill him.  Then, she started sticking the icepick into the chair.  When she backed up, he got out of the chair and tried to pull the icepick out of her hand.  According to Guillory, she pulled back on the icepick, she slipped and hit her head on the table.

## II. Discussion

### A. Ineffective Assistance of Counsel

In issues one and two, Guillory argues he received ineffective assistance of counsel. *See* U.S. CONST. amend. VI.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test for evaluating ineffective assistance of

---

[1]State's exhibit 2 is the candle, which Guillory allegedly used to hit Simon.  The candle was recovered from Simon's house and admitted into evidence during the State's case-in-chief.

counsel claims. *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009). To obtain a reversal of a conviction under the *Strickland* test, an accused "must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding." *Id*. (citing *Strickland*, 466 U.S. at 687). The second prong of the *Strickland* test is generally met by showing there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. (citing *Strickland*, 466 U.S. at 692); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

*1. Failure to Timely Amend Motion for New Trial*

Guillory argues his trial counsel was ineffective for failing to timely amend his pro se motion for new trial. A defendant may amend his or her motion for new trial before it is acted upon so long as it is amended within thirty days of the sentencing date. TEX. R. APP. P. 21.4(b); *Klapesky v. State*, 256 S.W.3d 442, 454 (Tex. App.–Austin 2008, pet. ref'd). Here, assuming counsel's performance was deficient for failing to amend Guillory's pro se motion for new trial, Guillory has failed to demonstrate a reasonable probability that the result of the proceeding would have been different if counsel had acted professionally by timely amending the motion for new trial. *See Thompson*, 9 S.W.3d at 812.

*2. Counsel's Failure to Assert Ineffective Assistance of Counsel Claims at the Hearing on the Motion for New Trial*

On November 26, 2007, Guillory filed a timely pro se motion for new trial, alleging: (1) the trial court abused its discretion in refusing to grant his pro se motion to dismiss[2] his attorney of record, and (2) he received ineffective assistance of trial counsel. Guillory argues that the attorney who represented him at the hearing on his pro se motion for new trial was ineffective for failing to assert that his trial counsel was ineffective. Even if we assume the attorney who represented Guillory at the new-trial hearing was deficient on this basis, Guillory has failed to demonstrate a reasonable probability that the result of the proceeding would have been different if counsel had acted professionally by asserting this claim at the new-trial hearing. *See Thompson*, 9 S.W.3d at 812.

*3. Failure to Request a Hearing on the Discovery Motion*

Guillory argues trial counsel was ineffective for failing to request a hearing on his discovery motion. After Guillory was charged with Simon's assault, his trial counsel filed a discovery motion; however, no hearing was ever held on the motion. On appeal, Guillory argues that because potentially exculpatory material "was hidden by the State," trial counsel's failure to "press for a hearing" on the discovery motion constituted ineffective assistance of counsel. To protect an accused's "right to a fair trial, the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the prosecution to disclose exculpatory and impeachment evidence to the defense that is material to either guilt or punishment." *Ex parte Reed*, 271 S.W.3d 698, 726 (Tex. Crim. App. 2008) (citing *Strickler v. Greene*, 527 U.S. 263, 280 (1999)). The Supreme Court has

_____

[2]We note that on September 13, 2007, Guillory's attorney of record filed a motion to withdraw as counsel in this case. That day, the trial court granted the motion to withdraw.

held that this rule encompasses evidence unknown to the prosecution but known to law-enforcement officials and others working on their behalf. *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). To succeed in showing a violation, an accused must show: (1) the evidence is favorable to him because it is exculpatory or impeaching; (2) the evidence was suppressed by the government or persons acting on its behalf, either inadvertently or willfully; and (3) the suppression of the evidence resulted in prejudice (i.e., materiality). *Ex parte Reed*, 271 S.W.3d at 726-27 (citing *Strickler*, 527 U.S. at 281-82); *see Brady v. Maryland*, 373 U.S. 83, 87-88 (1963). "Evidence is material to guilt or punishment 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id*. at 727 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "'A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.'" *Id*. (quoting *Bagley*, 473 U.S. at 682). Here, Guillory complains the prosecution withheld: (1) the offense report relating to an incident when Simon's husband assaulted her; (2) the details relating to the extent of the injuries Simon suffered when she was assaulted by her husband; (3) Simon's prior criminal history; and (4) photographs, which showed a waxy substance in Simon's hair.

a. *The Offense Report and Details About the Injuries Simon Suffered After Her Husband Assaulted Her*

During the State's case-in-chief, Simon testified that on July 19, 2007 (six days before Guillory allegedly assaulted Simon), she and her husband "had gotten into a confrontation" during which he hit her with an open door on his truck, causing her to fall and hit her head on concrete. She did not know she suffered any injury to her head "until later because . . . . [she] started having headaches." When the prosecutor asked her, "Okay so you didn't go see a doctor right away?", she said, "No I didn't."

7

Guillory does not state how either the offense report or the details of Simon's prior head injury constituted exculpatory or impeaching evidence. We note defense counsel's strategy was to show, in part, the injuries Simon testified that she received from Guillory's assault upon her were actually caused by the prior assault. Assuming *arguendo* that the complained-of evidence was either exculpatory or impeaching, Guillory still has the burden to show that the suppression of this evidence resulted in prejudice. *See Ex parte Reed*, 271 S.W.3d at 726-27 (stating that to succeed in showing a *Brady* violation, an accused must show the suppression of the evidence resulted in prejudice (i.e., materiality)). Guillory has not shown that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *See id*. at 727.

*b. Simon's Criminal History*

On appeal, Guillory states that Simon's criminal history does not appear in the record, and he does not state the nature of her criminal history. Nevertheless, assuming *arguendo* that the State withheld evidence of Simon's criminal history, Guillory still has the burden to show that the suppression of the criminal history resulted in prejudice to him. *See Ex parte Reed*, 271 S.W.3d at 726-27. Guillory has not shown that there is a reasonable probability that, had the criminal history been disclosed to the defense, the result of the proceeding would have been different. *See id*. at 727.

*c. Photographs of Simon's Hair*

Shortly after Guillory assaulted Simon, Officer Koen saw what "appeared to be wax off a candle" in Simon's hair. He used a digital camera to photograph the substance and then transferred the photographs onto a disc, which was submitted along with his report to the sheriff's office. During trial, defense counsel asked Officer Koen, "Did you put that fact in your report? The fact that you believe that there was some wax in her [Simon's]

8

hair?" To this, he replied, "It should . . . show up in the pictures that I took at the incident." Officer Koen did not bring these photographs to trial with him, and defense counsel had not seen them. After defense counsel passed Officer Koen as a witness, the trial court asked Officer Koen to retrieve the photographs. Officer Koen told the court the photographs "would have to be developed" unless there was another way to show them. When the trial court asked the prosecutor if he had a digital printer, he said that he did. After a recess, the prosecutor told the trial court he had given the photographs to defense counsel. At this point, the following exchange occurred between the court and defense counsel:

> Court: And do you desire a recess, continuance for a day or so while you examine those photographs?
>
> Counsel: No Judge, I've examined them. Our problem is more so that we prepared defenses in a certain way and those pictures kind of put a bit of a cramp in our procedure.
>
> Court: Well I will recess the trial while you re-examine it if you want to.
>
> * * * *
>
> Court: I have indicated to . . . [defense counsel] that I am willing to give him any time, reasonable time that he needs as a result of [the] State's inability to comply with the [discovery] agreement. . . .

After another recess, defense counsel told the trial court:

> Counsel: There are a couple of pictures that I am going to object to coming in. Most of them are okay. There are a couple of them that kind of hurts the Defense strategy that we have built up during trial.
>
> Court: [D]o I need to wait and to hear those at the time that they might be introduced?
>
> Counsel: I can make the appropriate objections at the time.

During Officer Koen's cross-examination, the prosecutor offered into evidence a

9

photograph showing the waxy substance in Simon's hair. Defense counsel objected that the photograph was "extremely prejudicial to the way that we built our defense. . . ." The trial court sustained the objection.

On appeal, Guillory argues that "[h]ad the defense known of the pictures and the evidence of wax in the hair, it would have presented a different defense which explained the existence of the wax." However, we note that the trial court asked Guillory's counsel if he "desire[d] a recess, continuance for a day or so while you examine those photographs[?]" However, counsel told the court he did not need a continuance. Afterwards, the trial court stated it was "willing to give him [defense counsel] any time, reasonable time that he needs as a result of [the] State's inability to comply with the [discovery] agreement." Rather than request additional time to prepare a defense to explain the existence of the wax in Simon's hair, defense counsel told the court he would object to the photographs as they were introduced. The record does not show what defense, if any, defense counsel would have prepared had he known about the photographs before trial. Thus, Guillory has not shown that there is a reasonable probability that, had the photographs been disclosed to the defense before trial, the result of the proceeding would have been different. *See Ex parte Reed*, 271 S.W.3d at 727.

Therefore, even assuming counsel was deficient for failing to have a hearing on the discovery motion, Guillory has failed to demonstrate a reasonable probability that the result of the proceeding would have been different if counsel had obtained a hearing on the discovery motion. *See Thompson*, 9 S.W.3d at 812. Issues one and two are overruled.

*B. Sufficiency of the Evidence*

In issue three, Guillory argues the evidence is legally and factually insufficient to support his conviction.

10

*1. Standard of Review-Legal Sufficiency*

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Sanchez v. State*, 275 S.W.3d 901, 902 n.2 (Tex. Crim. App. 2009). This "standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. The trier of fact is the sole judge of the weight and credibility of the evidence. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any inconsistencies in the evidence in favor of the judgment. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

*a. Applicable Law*

We review the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *State v. Blankenship*, 170 S.W.3d 676, 682 (Tex. App.–Austin 2005, pet. ref'd). The *Malik* test applies to non-jury or bench trials. *Malik*, 953 S.W.2d at 240; *Blankenship*, 170 S.W.3d at 682.

Section 22.01(a)(1) of the Texas Penal Code entitled "Assault" provides that "[a] person commits an offense if the person . . . intentionally, knowingly, or recklessly causes bodily injury to another, . . . ." TEX. PENAL CODE ANN. § 22.01(a)(1). "Bodily injury" is

defined as "physical pain, illness, or any impairment of physical condition."  *Id*. § 1.07(a)(8) (Vernon Supp. 2008).

Here, the information alleged the offense in the following manner:  "REGINALD GUILLORY heretofore on or about the 25th Day of July A.D., 2007, . . . did then and there intentionally, knowingly, or recklessly cause[d] bodily injury to JACKIE SIMON, a member of the defendant's family or household, to-wit:  BY STRIKING HER WITH A CANDLE AND/OR A CANDLE HOLDER; . . . ."  The family code states that "'Family' includes individuals related by consanguinity . . . ."  TEX. FAM. CODE ANN. § 71.003 (Vernon 2008). Section 573.022(a) of the government code provides, in relevant part, that "Two individuals are related to each other by consanguinity if:  (1) one is a descendant of the other; . . . ." TEX. GOV'T CODE ANN. § 573.022(a)(1) (Vernon 2004).  "Household" means a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other."  TEX. FAM. CODE ANN. § 71.005.

*b. Analysis*

In this case, a rational fact finder could have determined the following from the evidence:  (1) Simon is Guillory's mother, and both lived in the same household; (2) while they were having an argument, Simon turned around and felt something hit the back of her head; (3) she felt pain and heard her head "crack"; (4) when she tried to get up, she saw a candle on the living room floor; (5) she did not see what had hit her, but testified that the candle had hit her on the head; (6) when she asked Guillory why he had hit her with the candle, he did not answer; (7) she testified she knew the object that hit her on the head was a candle because prior to getting hit, the candle was on the bar; after she was hit, she saw the candle on the floor; (8) when Officer Koen touched the area on Simon's head where she said she had been hit, she "hollered" and said it hurt; and (9) Officer Koen saw

12

what "appeared to be wax off a candle" in Simon's hair in the area where she said she had been hit with the candle.

Controverting evidence showed that: (1) Guillory denied that he had hit Simon; (2) he said that Simon hit her head after she had fallen down when pulling on the icepick; (3) Officer Koen saw no injury on Simon's head; (4) Officer Koen testified that the "flakes that appeare[d] to . . . . be wax" "could have been anything[;]" (5) six days prior to this assault, Simon had fallen and hit her head on concrete; and (6) the prior assault caused her to have headaches.

Given this evidence, we assume the trial court resolved conflicts, including conflicting inferences in favor of the verdict. *Matchett v. State*, 941 S.W.2d 922, 936 (Tex. Crim. App. 1996). In conducting our legal sufficiency review, we defer to that resolution and also resolve any inconsistencies in favor of the verdict. *See id.*; *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). Viewing the evidence in the light most favorable to the verdict, we hold the evidence is legally sufficient to sustain the conviction beyond a reasonable doubt.

*2. Standard of Review-Factual Sufficiency*

In a factual sufficiency review, the only question to be answered is: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008). Evidence can be deemed factually insufficient in two ways: (1) "the evidence supporting the conviction is 'too weak' to support the factfinder's verdict:" or (2) "considering conflicting evidence, the factfinder's verdict is 'against the great weight and preponderance of the evidence.'" *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). "When a court of appeals

13

conducts a factual sufficiency review, [the court] must defer to the jury's findings." *Id*. (citing *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). The court of criminal appeals has "set out three 'basic ground rules' implementing this standard." *Id*. (quoting *Watson*, 204 S.W.2d at 414). First, the appellate court "must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict." *Id*. (citing *Watson*, 204 S.W.3d at 414). Second, the appellate court "may only find the evidence factually insufficient when necessary to 'prevent manifest injustice.'" *Id*. (quoting *Cain*, 958 S.W.2d at 407). "Although the verdict is afforded less deference during a factual sufficiency review," an appellate court is not free to "override the verdict simply because it disagrees with it." *Id*. (citing *Cain*, 958 S.W.2d at 407). Third, the appellate court "must explain why the evidence is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict." *Id*. (citing *Watson*, 204 S.W.3d at 414).

Viewing the evidence neutrally, we conclude the evidence supporting the conviction is not so weak that the fact finder's determination is clearly wrong and manifestly unjust, or that the verdict is against the great weight and preponderance of the evidence. We hold the evidence is factually sufficient to support the conviction. Issue three is overruled.

*C. Hearing on Motion for New Trial*

In issue four, Guillory argues the trial court abused its discretion by denying him a meaningful hearing on his pro se motion for new trial. To preserve an issue for appellate review, "[t]he brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "An argument that fails to cite supporting authority presents nothing for review." *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000) (citing *McFarland v. State*, 928 S.W.2d 482, 512 (Tex. Crim. App. 1996), *see Dunklin v. State*, 194 S.W.3d 14, 23 (Tex. App.–Tyler

14

2006, no pet.); *Willis v. State*, 192 S.W.3d 585, 597 (Tex. App.–Tyler 2006, pet. ref'd); *Dennis v. State*, 151 S.W.3d 745, 752 (Tex. App.–Amarillo 2004, pet. ref'd); *King v. State*, 17 S.W.3d 7, 23 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd) (op. on reh'g). Because Guillory has failed to cite supporting authority for his argument, his issue is inadequately briefed and presents nothing for review. *See* TEX. R. APP. P. 38.1(i); *Rocha,* 16 S.W.3d at 20 (argument that fails to cite to supporting authority in support of claim presents nothing for review). Issue four is overruled.

### III. Conclusion

We affirm the trial court's judgment.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 2nd day of July, 2009.

15