**Michael Dee HOWARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04-05-00388-CR.**

Court of Appeals of Texas,
San Antonio.

Sept. 19, 2007.

Discretionary Review Refused
Jan. 16, 2008.

Patrick Barry Montgomery, Attorney At Law, San Antonio, for Appellant.

Steven Allen Wadsworth, Lucy Cavazos, Asst. Dist. Atty., Kerrville, for Appellee.

Sitting: KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice, STEVEN C. HILBIG, Justice.

## MEMORANDUM OPINION

Opinion by STEVEN C. HILBIG, Justice.

A jury convicted appellant Michael Howard of aggravated assault with a deadly weapon and the trial court imposed a sen-

tence of twenty years in prison and a $5,000 fine. On appeal, appellant advances four points of error: (1) the trial court erred in denying his motion to suppress; (2) the trial court erred in denying his request for a jury instruction on voluntary intoxication; (3) the court reporter failed to record bench conferences; and (4) he was denied the effective assistance of counsel. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

Having decided to leave appellant, her husband, Linda Howard took her two youngest children to the home of her oldest son, Bradley. Appellant subsequently drove to Bradley's house where he demanded money from his wife. As Linda Howard went to get the money, appellant cut Bradley several times on the arm and stabbed him in the back with a utility knife or "box cutter." After a brief struggle, Linda and Bradley subdued appellant by pinning him against a wall. Britney Howard, another of the couple's children, called 911 and deputies from the Gillespie County Sheriff's office arrived and arrested appellant. He was subsequently charged with aggravated assault with a deadly weapon.

Three days after the arrest, Linda called Gillespie County Sheriff's Deputy William Hudson. She informed the deputy that she had found a utility knife and other items she thought the deputy "should be aware of" in the truck used by appellant. The truck had remained on Bradley's property since the day of appellant's arrest. Deputy Hudson, with the consent of both Linda and Bradley, searched the vehicle. He found the utility knife and a

glass shard, approximately fifteen inches in length, with a "taped-up handle."[1]

Before trial, appellant filed a motion to suppress all tangible evidence discovered by law enforcement in connection with this case as the fruits of an unlawful search of his vehicle. He argued Deputy Hudson had not obtained valid consent to search his vehicle because his wife did not possess common authority over the vehicle. The trial court denied the motion to suppress. Appellant was convicted and now appeals.

### POINT OF ERROR ONE

In his first point of error appellant complains the trial court erred in denying his motion to suppress. Because the search was conducted without a warrant, the burden was on the State to demonstrate its conduct fell within one of the exceptions to the warrant requirement. *See Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex.Crim. App.2007). The State contends, as it did below, that Linda Howard, appellant's wife and co-owner of the truck, consented to the search. In reply, appellant asserts his wife had no authority to consent to the search of "his" truck.

### *Standard of Review*

 A trial judge is the sole trier of fact at a suppression hearing and thus evaluates witness testimony and credibility. *Torres v. State*, 182 S.W.3d 899, 902 (Tex.Crim.App.2005). When we review a trial court's ruling on a motion to suppress evidence we do so with great deference to its determination of historical facts while reviewing the court's application of the law de novo. *Id.* at 902. Because the trial court did not make explicit findings of fact,

1. The utility knife used to commit the crime was recovered by law enforcement the night of appellant's arrest. The utility knife found in the truck was apparently never offered into evidence. However, the glass shard was ad-mitted into evidence and the State argued in closing remarks to the jury that the shard with its "taped-up handle" demonstrated appellant's intent to harm the victim.

we imply the necessary fact findings, supported by the record, that would support the ruling. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex.Crim.App.2006). We review the evidence in a light most favorable to the trial court's ruling whether there are explicit fact findings or not. *Id.* at 818.

### Applicable Law

■ Although appellant cited provisions from both the United States Constitution and the Texas constitution in his written motion to suppress, he failed to argue before the trial court, or brief to this court, any error under the Texas constitution. Accordingly, we will apply only federal law in analyzing appellant's complaint. *See Muniz v. State*, 851 S.W.2d 238, 251–52 (Tex.Crim.App.), *cert. denied*, 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993). When deciding cases involving the federal constitution, Texas courts are bound by United States Supreme Court decisions interpreting the federal constitution. *State v. Guzman*, 959 S.W.2d 631, 633 (Tex.Crim. App.1998).

■ Consent to search is a well-established exception to the constitutional requirements of probable cause and a warrant. *Georgia v. Randolph*, 547 U.S. 103, 109, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006); *United States v. Matlock*, 415 U.S. 164, 167, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim.App.), *cert. denied*, 537 U.S. 1051, 123 S.Ct. 603, 154 L.Ed.2d 527 (2002). Law enforcement may obtain consent to search from a third party when the third party reasonably appears to possess common authority[2] over the premises or effects to be searched. *Illinois v. Rodriguez*, 497 U.S. 177, 186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). It does not matter that the third party did not have actual authority to consent to the search:

> As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief' " that the consenting party had authority over the premises? If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Id.* at 188–89, 110 S.Ct. 2793 (citations omitted). Spouses generally have common authority over marital property.[3] *White v. State*, 21 S.W.3d 642, 646 (Tex.App.-Waco 2000, pet. ref'd). Texas courts have long held that a wife may consent to the search of her husband's premises. *See Burge v. State*, 443 S.W.2d 720, 722 (Tex.Crim.App. 1969) (cases cited therein); *Ennox v. State*, 130 Tex.Crim. 328, 334, 94 S.W.2d 473, 476 (1936); *Leal v. State*, 82 S.W.3d 84, 88 (Tex.App.-San Antonio 2002, pet ref'd.); *Castaneda v. State*, 650 S.W.2d 211, 213 (Tex.App.-San Antonio 1983, no pet.)

---

**2.** This concept has been referred to as the "apparent authority" doctrine. *See, e.g., McNairy v. State*, 835 S.W.2d 101, 105 (Tex. Crim.App.1991). The Texas Court of Criminal Appeals has not expressly adopted the "apparent authority" doctrine. *Id.; but see Malone v. State*, 163 S.W.3d 785, 797 (Tex. App.-Texarkana 2005, pet. ref'd) (citing numerous courts of appeals' decisions expressly recognizing the apparent authority doctrine).

**3.** Under section 3.002 of the Texas Family Code, all property acquired during marriage is community property and, absent clear and convincing evidence to the contrary, all property possessed by spouses is presumed to be community property. Tex. Fam.Code Ann. §§ 3.002–.003 (Vernon 2006). Generally, community property is subject to joint management, control, and disposition unless otherwise provided by the spouses in writing. *Id.* § 3.102.

### Relevant Facts

The court conducted a pretrial hearing on Howard's motion to suppress. In addition to the facts related above concerning the search, Deputy Hudson testified the truck was not locked. He understood Linda Howard to be the owner of the truck and married to appellant.

Bill Grona was called by appellant and testified that the day after appellant's arrest, he entered the truck to move it to another part of the property. He testified the truck was parked in the driveway and hindered efforts to clean Bradley Howard's residence. He further stated the truck was unlocked, the keys were in the truck, and he did not seek permission from anyone to move the truck.

Appellant testified he had purchased the truck approximately six to eight months before his arrest while he was married to Linda Howard. Appellant also testified:

Q. Okay, and with regard to the truck, did your wife ever drive the car?

A. No, she couldn't. I was the only one that was able to drive, because it's a truck.

Q. And with regard to the access of the truck, who had access to the truck? Were you the exclusive person with access?

A. I'm the only person to drive it, if that's the question. I guess anybody could get to it, because it was out at——

Q. Did you ever give your wife permission to allow other people to get into the vehicle?

A. No, it was off limits to everyone.

### Analysis

■ Citing *United States v. Matlock,* appellant asserts his testimony demon-

strates his wife did not possess the requisite "common authority" to make her consent to search the truck effective against his privacy interests. However, while appellant's testimony at the suppression hearing may have established Linda Howard was not capable of driving the truck, such testimony did not establish any conscious effort by appellant to deny her access to the truck. Although appellant testified the truck was "off limits to everyone," he conceded that anyone could "get to it." Grona testified the keys were left inside the truck and he was able to move it out of the driveway. Deputy Hudson testified he had no difficulty entering the truck because it was unlocked. Appellant fails to demonstrate any limitation on his wife's exercise of control over the truck in her capacity as a joint owner of the property. *See Turner v. State,* 931 S.W.2d 52, 53 (Tex.App.-Houston [14th Dist.] 1996, no pet.) (noting defendant's failure to produce evidence of limitation of third party's apparent authority to consent to search). More importantly, appellant has failed to show that Deputy Hudson's belief that Linda Howard had apparent authority to consent to the search of the truck was objectively unreasonable. *See Randolph,* 547 U.S. at 110–13, 126 S.Ct. 1515. Appellant has also failed to demonstrate that, given the circumstances described above, he possessed a reasonable expectation of privacy in the truck. *See Katz v. United States,* 389 U.S. 347, 351–52, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

In light of the record, we cannot say the trial court abused its discretion in denying the motion to suppress. We overrule appellant's first point of error.[4]

---

**4.** Because we hold the trial court did not err in denying appellant's suppression motion based on the consent exception to the warrant

requirement, we need not address the arguments raised by the parties regarding the ap-

## Point Of Error Two

In his second point of error, appellant complains the trial court erred in denying his request for a jury instruction on voluntary intoxication at the punishment phase of the trial. We disagree.

### *Standard of Review*

■ In reviewing alleged jury charge error, we conduct our analysis in two stages, deciding first whether an error actually occurred and then whether the error resulted in harm sufficient to merit a reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App.2005). If we find no error, we need not address the second stage. *Id.* at 744.

### *Applicable Law*

■ "Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried." Tex. Penal Code Ann. § 8.04(b)(Vernon 2006). In order to receive a mitigation instruction based on voluntary intoxication there must be evidence the defendant was actually intoxicated at or near the time of the commission of the alleged offense. *Ex Parte Jose Noey Martinez*, 195 S.W.3d 713, 721–22 (Tex. Crim.App.2006). The evidence must also show that because of his intoxication the defendant was temporarily insane, or in other words, did not know his conduct was wrong. *Arnold v. State*, 742 S.W.2d 10, 14 (Tex.Crim.App.1987); *see also* Tex. Penal Code Ann. § 8.01(Vernon 2006) (defining insanity as not knowing wrongfulness of one's conduct resulting from severe mental disease or defect).

### *Analysis*

■ Appellant asserts the record is "replete with references" to his use of

plicability of the automobile exigency excep-

alcohol and prescription drugs and that his insanity was evidenced by the fact he could not remember hurting his son. Though the record may indicate he used and perhaps abused both alcohol and prescription drugs, there is no evidence in the record supporting appellant's claim that his alleged intoxication prevented him from knowing right from wrong while he was assaulting his son. "Evidence showing the defendant was intoxicated and nothing more does not justify submission of an issue on temporary insanity, and refusal to submit such charge in mitigation of punishment is not error." *Arnold*, 742 S.W.2d at 14. Furthermore, "[i]t is well settled that lack of memory is not the same thing as intoxication; thus, evidence showing loss of memory is not sufficient to require an instruction on temporary insanity." *Reyna v. State*, 11 S.W.3d 401, 403 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd).

We hold the trial court did not err in denying appellant's request for an instruction on intoxication resulting in temporary insanity because the evidence was insufficient to support the requested charge.

## Point of Error Three

■ In point of error three, appellant complains the court reporter failed to record bench conferences and he is entitled to a new trial.

Rule 13.1 of the Texas Rules of Appellate Procedure mandates that court reporters record and transcribe bench conferences "unless excused by an agreement of the parties." Tex.R.App. P. 13.1(a). However, a defendant is required to object to the court reporter's failure to record bench conferences to preserve error for appeal. *Valle v. State*, 109 S.W.3d 500, 508–09 (Tex.Crim.App.2003). Appellant does not

tion.

point to any objection during trial regarding the reporter's failure to record any bench conferences and we have found none. Therefore, any error is waived and we overrule appellant's third point of error.

### POINT OF ERROR FOUR

In his fourth point of error, appellant complains he was denied effective assistance of counsel. Appellant asserts his trial counsel: (1) failed to have medical records documenting appellant's prescription drug abuse and hallucinations the night of his arrest verified by affidavit, resulting in their exclusion from evidence; (2) failed to object on the record to the court reporter's failure to record sixteen bench conferences; (3) failed to object when the State introduced the glass shard (State's Exhibit 67) at trial; (4) opened the door to thirty-one unadjudicated extraneous offenses by representing in opening statements the evidence would show appellant was a kind and loving father and husband; and (5) failed to object to the admission of the extraneous offenses.

We find no merit to any of appellant's claims of ineffective assistance of counsel.[5]

### *Standard of Review*

To determine whether a defendant has been denied effective assistance of counsel, we determine first whether counsel's performance was deficient, and, if so, whether the deficient performance actually prejudiced the defense. *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. 2052; *Thompson,* 9 S.W.3d at 812.

To prevail on his claims, appellant must first show that his counsel's performance was deficient. Specifically, appellant must prove, by a preponderance of the evidence, that his counsel's representation fell below the objective standard of professional norms. Second, appellant must show that this deficient performance prejudiced his defense. As this Court explained in *Mitchell v. State* [, 68 S.W.3d 640, 642 (Tex.Crim.App.2002) ], "[t]his means that the appellant must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." A "reasonable probability" is one sufficient to undermine confidence in the outcome.

*Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim.App.2002) (citations omitted).

 We begin by presuming counsel's actions fell within the range of reasonable and professional assistance. *Mallett v. State,* 65 S.W.3d 59, 63 (Tex.Crim. App.2001). To overcome this presumption, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson,* 9 S.W.3d at 813–14. There is a strong presumption that counsel's actions and decisions are motivated by sound trial strategy. *Salinas v. State,* 163 S.W.3d 734, 740 (Tex.Crim.App.2005). When the record is silent as to counsel's strategy we do not simply speculate that counsel's performance was deficient. *Stults v. State,* 23 S.W.3d 198, 208 (Tex.App.-Houston [14th

---

5. With regard to his complaints concerning extraneous offenses, we note that in his briefing appellant has not argued or provided any authority to show that even if his counsel had acted appropriately, in his view, by not opening the door to the extraneous offenses and by objecting to their admission on grounds of relevance or prejudice, the trial court would have been required to exclude evidence of these extraneous offenses. Without such argument and authority, appellant cannot establish counsel's performance was deficient. *See Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Thompson v. State,* 9 S.W.3d 808, 812 (Tex. Crim.App.1999).

Dist.] 2000, pet ref'd). If the record is silent as to the reasoning behind counsel's actions, the presumption of effectiveness is sufficient to deny relief. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex.Crim. App.2003). The standard for reviewing trial counsel's performance "has never been interpreted to mean that the accused is entitled to errorless or perfect counsel." *Ex Parte Welborn*, 785 S.W.2d 391, 393 (Tex.Crim.App.1990).

### Analysis

Appellant first argues his counsel's performance was deficient when he failed to have medical records verified by affidavit which resulted in their exclusion from evidence. He alleges these records show he took five Xanax pills within two hours before his arrest, he was suffering from hallucinations and agitation, he abused Xanax, and that Xanax can be an intoxicant. Appellant argues these records were necessary to provide sufficient evidence to support his requested jury charge on insanity. However, even if the medical records showed appellant had taken Xanax near the time of the offense, that Xanax can intoxicate, and that he could be classified as a Xanax "abuser," such evidence would not have been sufficient to support a jury instruction on voluntary intoxication without further evidence that the intoxication produced a state of temporary insanity. *See Arnold*, 742 S.W.2d at 14. Neither the medical records nor any other evidence in the record shows appellant did not know his conduct was wrong when he assaulted his son.

■ Appellant argues he received ineffective assistance when counsel failed to object on the record to the court reporter's failure to record sixteen bench conferences. He contends there is no sound trial strategy in failing to object and his counsel's performance was therefore deficient.

While competent trial counsel should ensure all rulings appear in the record, the record is silent as to whether evidentiary rulings were made at some or all the bench conferences and whether such rulings were erroneous. This court cannot engage in mere speculation that had an objection been made, the outcome of appellant's proceeding would have been different. *See Toney v. State*, 3 S.W.3d 199, 210 (Tex. App.-Houston [14th Dist.] 1999, pet. ref'd).

Appellant next complains of counsel's failure to object when the State introduced the glass shard during trial. This complaint is without merit because counsel preserved error by obtaining a ruling on the motion to suppress. No further objection was necessary. *See Garza v. State* 126 S.W.3d 79, 84 (Tex.Crim.App.2004).

■ Appellant also argues he received ineffective assistance when trial counsel opened the door to extraneous bad acts. He alleges that despite knowledge of appellant's history of extraneous acts, counsel's comments during his opening statements that appellant was a kind and loving father "opened the door," enabling the State to inquire about past incidents of misconduct involving appellant and his family members. The record does not indicate whether appellant objected to the evidence or whether the trial court admitted the evidence based on trial counsel's opening statement. In fact, the record indicates the State did not attempt to offer evidence of extraneous acts until after appellant testified on direct examination about various outings with his family and that he loved his children. Accordingly, appellant's complaint is not supported by the record.

In view of the entire record, it seems counsel's trial strategy was to present appellant to the jury as a kind and loving father who was simply unable to control himself while on prescription drugs and

alcohol. Counsel attempted to excuse the assault of appellant's son based on temporary insanity and tried to support this theory with evidence that appellant and his family had a healthy relationship, which included trips to Disney World and Hawaii. When appellant was asked how he felt about his children, he responded: "I love them very much." And to the question: "How do you feel about Brad?" Appellant responded, "I'm very proud of him." Appellant's attempt to get a jury charge on intoxication also supports this defensive theory. Counsel's remarks in his opening statement were consistent with his trial strategy and the record does not affirmatively demonstrate counsel's actions were unreasonable. Appellant has failed to overcome the presumption of reasonable professional assistance. *See Thompson,* 9 S.W.3d at 814.

 In his final argument, appellant contends he received ineffective assistance when his counsel failed to object to the State's evidence of certain extraneous acts: three events at a lake, an incident involving appellant's employee, and an allegation appellant frequented men's clubs. He also generally refers to other alleged incidents including some involving domestic violence. He argues these bad acts were irrelevant and the State was only attempting to show he was a "bad guy in the past." However, even if we assume counsel performed deficiently by failing to object to the evidence, appellant failed to show there is a reasonable probability that but for these unprofessional errors, the outcome of the proceeding would have been different. *See Garza v. State,* 213 S.W.3d 338, 347–48 (Tex.Crim.App.2007). Appellant merely argues the extraneous bad acts would have been inadmissible, cites no legal authority in support of this argument, and fails to demonstrate that had this evidence not been before the jury, the outcome of the

proceeding probably would have been different. *See id.* at 348.

Lastly, as to the prejudice prong of the *Strickland* test, we note that the evidence of appellant's guilt was overwhelming. *See Dennis v. State,* 151 S.W.3d 745, 752 (Tex.App.-Amarillo 2004, pet. ref'd) (holding overwhelming evidence of appellant's guilt negated reasonable probability that outcome would have been different but for counsel's alleged deficient performance). Bradley Howard, Linda Howard, Britney Howard, and Cammie Olfers all testified they witnessed appellant cut or stab the complainant. Moreover, appellant never claimed he did not cause injury to his son but rather that he could not recall cutting the complainant with a weapon. Given the evidence, we cannot say the outcome would have been different but for alleged errors by appellant's counsel. *See id.*

Accordingly, we overrule appellant's final point of error.

### CONCLUSION

Based on the foregoing, we overrule appellant's complaints and affirm the trial court's judgment.