



## MEMORANDUM OPINION

No. 04-11-00358-CR

Christopher **ALLGOOD**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR9645
Honorable Melisa Skinner, Judge Presiding

Opinion by:   Marialyn Barnard, Justice

Sitting:      Sandee Bryan Marion, Justice
              Rebecca Simmons, Justice
              Marialyn Barnard, Justice

Delivered and Filed:  August 29, 2012

AFFIRMED

A jury convicted appellant Christopher Allgood of the murder of Courtney Gass. On appeal, Allgood contends: (1) the evidence was insufficient to support the murder conviction; (2) his trial counsel was ineffective; and (3) the jury charge improperly shifted the burden of proof on the issue of self-defense. We affirm the trial court's judgment.

## BACKGROUND

Officers from the San Antonio Police Department were called to an apartment complex in the early morning hours of July 5, 2009. When they arrived, officers entered an apartment and found the bodies of Courtney Gass, her young daughter, and a friend, John Kevin Bones.[1] All of the victims had been shot in the head. After questioning witnesses at the crime scene, the police took Allgood, Gass's former boyfriend, to the police station for questioning. Ultimately, Allgood was arrested and charged with Gass's murder. At trial, the State solicited testimony from people who were at the apartment complex at the time of the murder, a friend of Gass's, law enforcement personnel, and crime lab personnel.

Roland Garcia testified that in the early morning hours of July 5, 2009, he was awakened by a loud "bang." He then heard another loud "popping noise," followed by five or six other "popping noises." All of the noises were coming from the apartment below.

Jesse Flores, who was visiting a friend who lived at the complex, testified he heard gunshots. Flores told the jury he arrived at the complex around 2:00 a.m. or 2:30 a.m. He stated that when he arrived, his friend was outside on the ground level talking to Allgood. Flores said Allgood was holding a rifle. Flores and his friend went upstairs to her apartment, but remained outside talking. It was then he heard the gunshots, which he said came from below.

Abel Trask, the security guard on duty at the apartment complex that night, testified he heard gunshots. He stated he thought someone was firing the gun to celebrate the July 4th holiday. Trask drove to where he believed the shots came from and saw Allgood walking outside, holding a rifle. Trask drew his weapon and ordered Allgood to drop the rifle, but Allgood ignored Trask. Trask and Allgood then struggled over the rifle.

---

[1] With regard to this appeal, Allgood was convicted only of the murder of Gass.

Both Garcia and Flores testified they heard Trask order Allgood to drop the rifle. Garcia and Flores stated they saw Trask struggling to take the weapon away from Allgood. Flores told the jury he went downstairs to help Trask. Flores and Trask were able to remove the rifle from Allgood. Trask said that when they took the rifle from Allgood, it felt warm, as if it had been fired recently.

Detective Linda Miller testified Allgood was given *Miranda* warnings and interviewed at the police station. According to Detective Miller, Allgood initially denied any involvement in the shootings, but after several hours he admitted shooting Gass. He claimed he shot Gass because she had killed her daughter and Bones and was coming at him with a knife. Alternately, Allgood claimed the gun accidentally discharged. Detective Miller testified Allgood's story changed several times throughout the interview, but he consistently denied shooting Gass's daughter or Bones.

Dawn Pennington, a friend of Gass's, testified about a possible motive for the murder. She told the jury Gass had visited her a couple of weeks before the murder. During that visit, Gass and Pennington made plans for Gass and her daughter to leave Allgood and move to Austin where they would live with Pennington. Pennington also told jurors that Allgood had once been employed at a San Antonio shooting range.

The State also called experts to testify. One of those experts was Chrystyna Vachon, a forensic scientist in the trace evidence section of the Bexar County Crime Lab. Vachon's testimony concerned the results of gunshot residue tests. Vachon told the jury gunshot residue particles are present when a person fires a gun, handles a gun that has been recently fired, or is near a gun when it is fired. According to Vachon, a living person loses these residue particles as time passes from regular movement; a dead body does not.

Vachon testified a gunshot residue test was performed on residue from Allgood's hands. The first test was done approximately four hours after the murders and showed Allgood had gunshot residue on both hands. A second test was performed twelve hours after the murders, and no residue was found on his hands. Tests taken from Gass's body showed she had particles on both hands, with more on her right hand, on her face, and on her hair close to the entry wound of the bullet. Vachon admitted she could not say with certainty whether Gass fired a firearm, handled a firearm that had been recently fired, or was merely in close proximity to a firearm when it was fired. However, she opined that the residue on Gass's face was most likely present because she had either come into contact with a recently fired weapon or was in close proximity to it when it was fired.

The State also called a DNA expert from the crime lab. This expert testified only Allgood's DNA was found on the trigger of the rifle. Gass's DNA was not found on the trigger.

A firearms expert testified all of the bullets found at the scene were fired from the rifle that was in Allgood's possession after the murder. The expert stated the trigger pull on the rifle is "on the heavier side for a rifle." In other words, a light touch would not make it fire.

Allgood, in support of his claim of self-defense, called a police officer who arrested Gass for assaulting Allgood about two weeks before she was killed. The officer testified it appeared Gass had been the aggressor. However, the officer admitted he offered victim services to Gass.

Allgood also called a private forensic scientist who testified gunshot residue can remain on a person longer than six hours, contradicting Vachon's testimony that it would not. The expert also testified the gunshot residue on Gass's right hand was consistent with her having fired a gun. He admitted, however, that a body can become coated with gunshot residue if it is simply in a room when a gun is fired.

At the conclusion of the evidence, the trial court charged the jury on the applicable law. As requested by Allgood, the trial court's charge included an instruction on the law of self-defense. After deliberating, the jury found Allgood guilty of murder, rejecting his claim of self-defense.

## ANALYSIS

As noted above, Allgood raises three issues challenging the trial court's judgment. More specifically, he challenges the sufficiency of the evidence to support his conviction, the effectiveness of his trial counsel, and the court's jury charge relating to self-defense. We shall deal with each issue in turn.

### *Sufficiency of the Evidence*

Allgood admits he caused the death of Gass. However, Allgood contends the evidence is insufficient to support the murder conviction because the evidence proves he acted in self-defense or the shooting was accidental, thereby negating the required culpable mental state necessary for murder. As to self-defense, Allgood contends Gass shot her daughter and Bones and then came at him with a knife.

We begin by noting that although Allgood raises both legal and factual sufficiency challenges to evidence, factual sufficiency review was abolished by the court's decision in *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). In *Brooks*, the court held there is but one evidentiary standard for every sufficiency review, the legal sufficiency standard enunciated by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Id.* Thus, we will review Allgood's sufficiency complaint in accord with *Jackson*.

In a legal sufficiency review, the courts must evaluate all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential

elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The legal sufficiency standard mandates that an appellate court defer to the factfinder's credibility and weight determinations. *Brooks*, 323 S.W.3d at 899. This standard of review ensures the appellate courts do not usurp the role of the jury and reinforces the jury's duty to weigh the evidence, resolve conflicts of testimony, and draw inferences from the facts presented. *Jackson*, 443 U.S. at 319. Unless a reasonable juror would have had a reasonable doubt about one of the elements of the offense, the verdict will be affirmed. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). In other words, "[a]fter giving proper deference to the factfinder's role, we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Id.*

A person commits the offense of murder if he "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1)-(2) (West 2011). However, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a).

A defendant has the burden of producing some evidence to support a claim of self-defense. *McClesky v. State*, 224 S.W.3d 405, 409 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Once the defendant meets this burden, the burden shifts to the State, which then has the burden of persuasion to disprove the claim of self-defense. *Id.* This does not require the State to produce evidence; rather, the State need only prove its case beyond a reasonable doubt. *Id.* Therefore, to convict a defendant after he has raised self-defense, the State must prove the elements of the offense beyond a reasonable doubt, and persuade the jury beyond a reasonable

doubt that the defendant did not kill in self-defense. *Id.* The issue is a factual one to be determined by the jury, which may accept or reject the claim of self-defense. *Id.* A finding of guilt by the trier of fact implies a finding against self-defense. *Id.*

We find Allgood produced some evidence to support his claim of self-defense. Allgood told the detective on the night of the murder that Gass came at him with a knife or a gun, and he was forced to shoot her to protect himself. And, Allgood presented evidence that two weeks before the murder Gass was arrested for assaulting him. The officer who arrested Gass testified he believed Gass was the aggressor.

Allgood also pointed to the results from gunshot residue tests that revealed only small amounts of residue on his hands, and none on his shorts, compared to the greater amount of gunshot residue on the victim, and the fact that the tests for gunshot residue can mean one of three things: (1) the individual handled a firearm that had been fired; (2) the individual was near a firearm when it was discharged; or (3) the individual actually fired a firearm.

Given the production of evidence by Allgood, the State had to persuade the jury beyond a reasonable doubt that Allgood did not act in self-defense. Viewing all of the evidence in the light most favorable to the verdict, we hold the jury was entitled to find the State met its burden.

Allgood admitted shooting Gass. Allgood was seen with the gun a short time before the murders by more than one witness. He was also walking around outside with the gun after the murders and the gun had to be taken from him. Allgood undisputedly had gunshot residue on his hands. There was evidence, given the position Gass was found in after the murder, that she was sitting at a computer desk when she was shot, not coming toward Allgood. There was also evidence Gass was shot from at least five or six feet away. In addition, the jury heard testimony

that the only DNA found on the trigger of the firearm belonged to Allgood. None of the victim's DNA was found on the trigger.

The knife Allgood claimed Gass was holding when he shot her was not the same knife found in the room with the body. And given where the knife was discovered, it suggested Gass was not holding the knife when she was shot. Moreover, Pennington provided a motive for the murders: Gass intended to take her child and leave Allgood.

Finally, witnesses testified there was not just one shot, but a shot and then a series of shots. This evidence supports an inference that several shots were fired in the apartment–one to kill Gass and then several others to kill the other two victims who were in the other room. And, it refutes Allgood's claim that Gass shot the two other victims, put down the gun, and then came at him with a knife.

Based on the evidence heard by the jury, we cannot say its implied rejection of Allgood's self-defense claim was irrational. It was the jury's duty to "weigh the evidence, resolve conflicts of testimony, and draw inferences from the facts presented." *Jackson*, 443 U.S. at 319. The jury was entitled to disbelieve Allgood's claim that Gass came at him with a weapon. It was entitled to believe, given the evidence, that Allgood murdered Gass.

As for Allgood's contention that he shot Gass by accident, that the gun just "went off" when he flinched, a firearms expert testified the trigger on the firearm used to kill Gass required a relatively heavy pull on the trigger to fire. This claim of accident is also inconsistent with the other story told by Allgood to the detective, i.e., that he shot Gass in self-defense. A reasonable juror could have rejected Allgood's contention that the gun accidentally discharged.

Viewing the evidence in a light most favorable to the verdict and with proper deference to the fact finder, we hold the jury could have reasonably concluded that Allgood murdered

Gass–that he did not act in self-defense and that it was not an accident. Accordingly, we hold the evidence was sufficient to support the murder conviction and overrule Allgood's sufficiency claim.

### *Ineffective Assistance of Counsel*

Allgood next contends he received ineffective assistance of counsel. Allgood claims his counsel was ineffective in that he: (1) failed to adequately investigate the case; (2) failed to preserve error with regard to the exclusion of certain defensive evidence; (3) failed to file and follow up on certain pretrial motions; (4) failed to object to highly prejudicial evidence; and (5) failed to communicate with Allgood.

The standard of review for an ineffective assistance of counsel claim is set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the appellant must prove by a preponderance of the evidence that his counsel's performance was "deficient." *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012). In other words, counsel's performance must have fallen below the "objective standard of reasonableness." *Id.* (citing *Strickland*, 466 U.S. at 688). The range of reasonable assistance by counsel is wide and the representation as a whole is measured, with deference given to the likelihood that actions taken were based on strategy. *Jimenez*, 364 S.W.3d at 883. Based on this, appellate courts face a strong presumption that counsel has in fact rendered adequate assistance and exercised "reasonable professional judgment." *Strickland*, 466 U.S. at 690. Appellate courts have never interpreted this standard of review to mean "'the accused is entitled to errorless or perfect counsel.'" *Badillo v. State*, 255 S.W.3d 125, 129 (Tex. App.—San Antonio 2008, no pet.) (quoting *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990)).

Under *Strickland*, the appellant must also prove that any deficient performance prejudiced his defense in such a way that there is a reasonable probability that "but for counsel's unprofessional errors" the outcome at trial would have been different. *Strickland*, 466 U.S. at 694; *Jimenez*, 364 S.W.3d at 883. This reasonable probability must be sufficient to "undermine confidence" in the verdict. *Thompson v. State* 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

Importantly, claims of ineffective assistance of counsel must be "'firmly founded in the record'" and "'the record must affirmatively demonstrate'" the merits of the claim. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Thompson*, 9 S.W.3d at 813). Otherwise, the strong presumption that trial counsel did in fact act within the proper range of reasonable and professional assistance and with sound strategy in mind will not be overcome. *Badillo*, 255 S.W.3d at 129.

Generally, direct appeals are inadequate vehicles for *Strickland* claims because the record is usually undeveloped. *Goodspeed*, 187 S.W.3d at 392. This is true with regard to claims of deficient performance where counsel's reasons for failing to do something do not appear in the record. *Id.* "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective[,]" and absent such an opportunity, a reviewing court "'should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)); *see also Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). Accordingly, "a silent record on the reasoning behind counsel's actions is sufficient to deny relief." *Badillo*, 255 S.W.3d at 129.

Applying these standards to this case, we hold Allgood has failed to prove his ineffective assistance of counsel claim. Allgood filed a motion for new trial. However, no hearing was held

on the motion, and Allgood failed to produce any evidence below to support his claim that trial counsel was ineffective. Thus, Allgood's claims that his trial counsel was ineffective are not "firmly founded in the record" and there is nothing in the record to demonstrate the merits of his claim of ineffective assistance. *See Goodspeed*, 187 S.W.3d at 392. Allgood did not produce any evidence to overcome the strong presumption that trial counsel acted within the proper range of reasonable and professional assistance and with sound strategy in mind. *See Badillo*, 255 S.W.3d at 129.

Allgood's trial counsel was not given an opportunity to explain his actions, and therefore, denouncing his performance as ineffective is improper unless the failures alleged by Allgood are "'so outrageous that no competent attorney'" would have failed to act. *See Goodspeed*, 187 S.W.3d at 392 (quoting *Garcia*, 57 S.W.3d at 440). We hold the alleged failures do not rise to such a level.

Even if we assume that the challenged conduct of Allgood's trial counsel was deficient, we hold the deficiencies did not cause Allgood to suffer such prejudice that "the outcome would have been different but for the alleged errors . . . ." *Howard v. State*, 239 S.W.3d 359, 368 (Tex. App.—San Antonio 2007, pet. ref'd). As detailed above, the evidence of Allgood's guilt was compelling. The jury heard Gass was planning to take her child and leave Allgood. Allgood had gunshot residue on his hands and clothing. The position of Gass's body indicated she was shot while seated at a desk, not while she was attacking Allgood, negating the claim of self-defense. The trigger pull on the gun required effort, belying Allgood's claim of accident. Witnesses saw Allgood with the murder weapon before and after the murder. Only Allgood's DNA was found on the murder weapon. Accordingly, we cannot say that but for counsel's alleged failures, Allgood would not have been convicted.

Accordingly, we overrule Allgood's second issue.

### *Jury Charge*

Finally, Allgood contends the portion of the jury charge that instructed the jury regarding self-defense improperly shifted the burden of proof or was "sufficiently confusing or misleading" so as to confuse the jury on the burden of proof. We disagree.

Allgood admits he did not object to the charge. "However, all alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). When reviewing allegations of charge error, we first determine whether the jury instruction at issue is erroneous. *Id.* If we find the instruction erroneous, we then conduct a harm analysis. *Id.* The issue of preservation is relevant in the harm analysis because the degree of harm required for reversal depends on whether error was preserved. *Id.* If, as here, error is not preserved, we will not reverse unless the record shows "egregious harm" to the defendant. *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005). "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Id.* (quoting *Hutch v. State*, 922 S.W.2d 166 ,171 (Tex. Crim. App. 1996)). When assessing whether error is egregious, appellate courts consider "the entirety of the jury charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

The portion of the charge about which Allgood complains states, in pertinent part:

> Or, if you find from the evidence beyond a reasonable doubt that on or about the 5th day of July, 2009, in Bexar County, Texas, the defendant, Christopher Allgood, with intent to cause serious bodily injury to an individual, namely Courtney Gass, did commit an act clearly dangerous to human life that

caused the death of Courtney Gass, by shooting Courtney Gass with a deadly weapon, namely, a firearm, but you further believe from the evidence, ***or you have a reasonable doubt thereof***, that, at the time he did so, the defendant reasonably believed that the use of force and the degree of force used were immediately necessary to protect himself against Courtney Gass's use or attempted use of deadly force, you will find the defendant not guilty.

(emphasis added). Allgood contends the highlighted portion of the foregoing instruction shifted the burden of proof to him to prove he acted in self-defense. However, after reviewing the instruction, we hold there is nothing in the instruction that advises the jury Allgood had the burden to prove self-defense. Rather, it correctly instructs the jury that if it believes Allgood acted in self-defense or has a reasonable doubt that he acted in self-defense, it must find Allgood not guilty. This is the standard self-defense charge.

Moreover, we hold the charge is not so "confusing or misleading" to have confused the jury on the burden of self-defense. The complained of portion of the charge, as already noted, does not instruct the jury on the burden of proof. Rather, other portions of the charge contained instructions on the burden of proof, making it clear that the entire burden was on the State:

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it failed to do so, you must acquit the defendant.

Accordingly, we hold the portion of the charge about which Allgood complains was not erroneous.

However, if the charge was erroneous, we would find the error was not so egregious so as to require reversal. Considering the entire charge, a portion of which clearly stated the burden of proof was on the State, the evidence, and the arguments of counsel, in which both counsel clearly advised the jury that the burden was on the State, we hold any charge error does not require reversal.

## CONCLUSION

Based on the foregoing, we overrule Allgood's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish