**Affirmed and Memorandum Opinion filed July 15, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00719-CR

**SHAWN DEROYCE SARGEON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1590681**

## MEMORANDUM OPINION

In a single issue, Appellant Shawn Deroyce Sargeon argues he received ineffective assistance of counsel in the underlying proceeding. For the reasons below, we affirm.

### BACKGROUND

Three masked men robbed a Valero gas station on the night of May 10, 2018. Appellant was arrested in connection with the incident and charged with

aggravated robbery with a deadly weapon. *See* Tex. Penal Code Ann. § 29.03(a)(2). Appellant proceeded to a jury trial in September 2019.

### *Evidence at Trial*

In its case-in-chief, the State presented testimony from fifteen witnesses. Two witnesses were present in the Valero gas station when the robbery occurred: the cashier, Otis Boggess, and a customer, Korey Bednarz. According to Boggess and Bednarz, three masked men entered the Valero with guns. Boggess described the suspects as "young guys" that "were black"; he also recalled that two of the men were wearing "security jackets." According to Boggess, he gave the men the money from two cash registers; one of the stacks of money given to the suspects contained a tracking device. Boggess testified that the suspects also took Newport and Swisher Sweet cigarettes as well as Bednarz's purse and cell phone.

Admitted into evidence during trial were surveillance video recordings taken at the Valero the night of the robbery. The video recordings show a blue SUV pulling into the Valero's parking lot and three masked men wearing all-black clothing entering the store. Next, the masked men are seen taking money from the cash registers and going through the cigarette and cigar rack. Finally, the video shows the masked men leaving the store and the blue SUV leaving the Valero's parking lot.

Testifying at trial, Houston Police Officer Richards said he was on patrol the night of May 10, 2018, when he received a call reporting "[a] robbery in progress at a gas station." After the initial call, Officer Richards said he was updated that "there was a tracking device that had been taken" along with the items stolen from the gas station.

According to Officer Richards, he began to follow the tracking device's

2

reported location. When he arrived at the "same location that the tracking device was," Officer Richards activated his emergency lights and sirens. Officer Richards testified that "there was one car that immediately reacted to [his] emergency equipment" — a red sedan. Officer Richards said the red sedan "blew through a stop sign" and Officer Richards proceeded to follow it.

Officer Richards followed the red sedan through several neighborhoods and onto Interstate 10. According to Officer Richards, he saw the red sedan crash into the interstate's center barrier and come to a stop. Officer Richards testified that he saw three black males exit the vehicle and run "into a wooded area." Officer Richards remained with the red sedan until it was towed off the freeway for further investigation.

Officer Ortiz assisted with the search for the three males who were seen exiting the red sedan. Watching his body camera footage from the evening in question, Officer Ortiz said he and other police offers maintained a perimeter around the wooded area where the three men had fled. According to Officer Ortiz, he, another officer, and a police dog began searching for the men in a "bamboo thicket". While searching through the bamboo, Officer Ortiz apprehended Appellant. According to Officer Ortiz, Appellant was wearing red shorts and a light-colored tank top. While searching Appellant's pockets, Officer Ortiz found a pack of Swisher Sweet cigarettes and Appellant's wallet.

Officer Sierra assisted in maintaining a perimeter of the wooded area where Appellant was apprehended. Officer Sierra testified that a second black male, Kalluppe Allen, also was found in the wooded area. Officer Sierra said the officers did not locate the third person who was seen exiting the red sedan after it crashed on the interstate.

According to Officer Sierra, he was speaking with Appellant when

3

Appellant "requested medical attention because he had just been involved in a vehicular crash." Officer Sierra also testified that Appellant told him "to go ahead and charge him with evading. That he'll just do his time."

After Appellant and Allen were transferred into custody, Officer Sierra inventoried the red sedan. Officer Sierra testified that he recovered from the vehicle two firearms as well as:

> a Med Security jacket. I also found a dark-colored hooded coat, which is kind of heavy, you know, when you carry it. I found a do-rag, black in color. I also found a cardboard box. I remember counting specifically 36 boxes of Newport cigarettes, white in color. I remember counting on or about 15 Swisher Sweets, a stack of money and then separate monetary bills.

Officer Sierra also recovered the tracking device hidden in one of the stacks of bills. Finally, Officer Sierra testified that he found Bednarz's purse.

Three witnesses from the Houston Forensic Science Center also testified at trial. The forensic science witnesses testified regarding the collection and processing of fingerprints recovered from the red sedan. According to forensic science witness Rebecca Green, she analyzed four fingerprints from the red sedan for certain identifying characteristics. Green said she proceeded to run the fingerprints through an "Automated Fingerprint Identification System" to determine "who those prints belong to." Green testified that she made a "preliminary association" between the fingerprints recovered from the red sedan and those of Appellant.

Finally, the State called two witnesses, Officer Zurita and Officer Cotton, to testify regarding two previous robberies that took place in Houston. According to Officer Zurita, three black males robbed a Papa John's pizza restaurant in central Houston on August 26, 2011. Officer Zurita testified that the suspects used a rifle

4

and a handgun during the robbery and that two of the suspects had their noses and mouths covered with bandanas. Officer Zurita said the suspects took money from the store and got away in a gray car with a red driver's door.

Officer Cotton testified about a separate robbery that occurred in Bellaire that same night. According to Officer Cotton, three black males entered a Shell gas station and robbed the clerks at gunpoint. Officer Cotton said the suspects used a rifle and a handgun during the robbery and left the scene in a light-colored sedan with a red door.

Officer Cotton testified that a vehicle matching that description was stopped two days later. According to Officer Cotton, Appellant was one of the individuals in the car when it was stopped. While searching the vehicle, Officer Cotton recovered a rifle, a revolver, and "some cigars, cigarillos that would have — that were some of the things that were stolen in the Bellaire robbery."

The State offered into evidence a declaration of records from the Texas Department of Criminal Justice. The records show Appellant was adjudicated guilty for the 2011 aggravated robberies at the Papa John's and Shell gas station. The trial court gave the jury a limiting instruction with respect to these extraneous offenses.

Appellant was the last witness to testify at trial. According to Appellant, the night of the robbery he called Allen to ask for a ride to the store to buy baby food and diapers. Allen picked up Appellant in a red sedan and, according to Appellant, Allen asked Appellant "to drop him off and then come pick him back up at a later time." Appellant dropped off Allen and drove the red sedan to complete his errands. Appellant returned to pick up Allen, who was dropped off in a blue SUV. According to Appellant, Allen "[e]mptied some contents inside of the [red sedan's] trunk" and Allen and another man got in the car.

5

Appellant was driving when he saw a police officer's car behind them with its lights on. Appellant said Allen told him to "go" and explained that he had "a firearm in the trunk." Appellant attempted to "get away" from the police officer but "eventually lost control of the vehicle". Appellant testified that he "[r]an across the oncoming traffic on the other side of the freeway into a bayou" and he and Allen hid in "some woods" until they were found by police officers. Appellant did not know where the other person in the red sedan had fled. Appellant testified that he did not commit the robbery that night at the Valero.

*Final Judgment*

The jury found Appellant guilty of aggravated robbery with a deadly weapon and assessed punishment at 30 years' confinement. Appellant appealed.

ANALYSIS

On appeal, Appellant argues he received ineffective assistance of counsel because his defense counsel (1) gave an opening statement that opened the door to Appellant's prior aggravated robbery convictions, and (2) "abdicated his role as a defense attorney when he told the venire panel that his role as a defense attorney was 'not to make sure [Appellant] goes home at the end of this case' but instead 'to defend the Constitution.'" We consider these issues below.

## I. Standard of Review and Governing Law

To prevail on a claim for ineffective assistance of counsel, an appellant must show that (1) trial counsel's performance fell below the objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Failure to satisfy either prong of the *Strickland* test defeats an ineffective assistance claim. *Strickland*, 466 U.S. at 697; *Nichols v.*

*State*, 494 S.W.3d 854, 857 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

To satisfy the first prong, an appellant must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Lopez*, 343 S.W.3d at 142. We consider the totality of the circumstances to determine whether counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Nichols*, 494 S.W.3d at 857. Trial counsel's performance is subject to a "highly deferential" review and there "is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). Thus, any allegation of ineffective assistance must be firmly founded in the record. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012).

Direct appeal usually is an inadequate vehicle for raising an ineffective assistance claim because the record generally is undeveloped. *Id.* at 592-93. Trial counsel ordinarily should be afforded an opportunity to explain his actions and, if counsel is not given that opportunity, we should not conclude that his performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013).

To satisfy the second *Strickland* prong, an appellant must show a reasonable probability that, but for trial counsel's deficient actions, the result of the proceeding would have been different. *Lopez*, 343 S.W.3d at 142. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

7

## II.    Application

### A.    Defense Counsel's Opening Statement

In his first ineffective-assistance argument, Appellant asserts his defense counsel's opening statement improperly opened the door to evidence of Appellant's prior aggravated robbery convictions.  Appellant contends that "[t]here can be no strategy for allowing the jury to hear that a defendant has previously been convicted of the same offense for which [he] is standing trial."

In his opening statement, defense counsel told the jury that, the night of the robbery, Appellant called Allen for a ride.  According to defense counsel, Allen let Appellant borrow his car for approximately one hour.  When Appellant returned to pick up Allen, Allen put a box in the car and instructed Appellant to continue driving.  Defense counsel told the jury that, when a police officer started following the car, Allen told Appellant to flee from the officer and to get on the interstate.  After Appellant crashed the car, Appellant and Allen hid in the woods until they were found by the police officers.

Describing this chain of events, defense counsel told the jury:

When [the officers] find [Appellant], he says to them, you got me for evading.  And that is true.  [Appellant] did evade.  What he did not do that night is rob a convenience store.  And this is the reason why you will not see anybody that can identify him.  . . .

What [Appellant] did was he had [Allen's] car.  He followed [Allen's] instructions to leave — to drive.  He evaded the police, but he did not rob anybody that night.

In its case-in-chief, the State cited defense counsel's opening statement and argued to the trial court that the statement opened the door to the admission of evidence showing Appellant's prior aggravated robbery convictions:

If the defense's strategy or theory is going to be this is a mistake, a

8

fact that the [Appellant] didn't have anything to do with this, that he had no clue there was an aggravated robbery or anything like that, we'd be asking the Court to be able to put on evidence of those extraneous [offenses] in our case in chief to show that this is not a mistake. That the [Appellant] knew what was going on and he was a part of the plan.

The trial court granted the State's request and permitted the State to introduce evidence of the prior aggravated robberies for the limited purpose of rebutting defense counsel's theory.

Defense counsel may open the door to evidence of an extraneous offense via an opening statement. *See Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016); *Mason v. State*, 416 S.W.3d 720, 740 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Likewise, when an appellant vigorously challenges identity through cross-examination, evidence of an extraneous offense is admissible to rebut a claim of mistaken identity. *Mason*, 416 S.W.3d at 740.

We recently considered an issue similar to the one presented here in *Osby v. State*, No. 14-17-00641-CR, 2019 WL 2305937, at *5 (Tex. App.—Houston [14th Dist.] May 30, 2019, no pet.) (mem. op., not designated for publication). There, the trial court held that the appellant opened the door to evidence of an extraneous offense "by challenging [the appellant's] identity as the perpetrator of the charged offense in his counsel's opening statement and in cross-examination of several witnesses." *Id*. at *2. On appeal, the appellant argued that his trial counsel, by opening the door to the extraneous offense, rendered ineffective assistance. *Id*. at *5.

Rejecting the appellant's argument, we noted that his trial counsel stated at the hearing on the admissibility of the extraneous offense "that identity was 'the entire case' and that [trial counsel] did not know what he could ask of any witness

9

that would not raise the issue of identity." *Id.* We concluded that the appellant's trial counsel "was not ineffective by presenting evidence and questioning witnesses on identity when identity was the only real defense, even though it may have opened the door to an extraneous offense." *Id.*

Similarly, courts repeatedly have held that opening statements or witness questioning that opens the door to a defendant's extraneous offense is not ineffective assistance where counsel's actions were consistent with a reasonable trial strategy. *See, e.g.*, *Howard v. State*, 239 S.W.3d 359, 368 (Tex. App.—San Antonio 2007, pet. ref'd) (mem. op.) (the appellant argued he received ineffective assistance when his counsel opened the door to extraneous bad acts; overruling this issue, the court held that "[c]ounsel's remarks in his opening statement were consistent with his trial strategy"); *Josey v. State*, 97 S.W.3d 687, 696 (Tex. App.—Texarkana 2003, no pet.) (counsel's questioning that opened the door to the forensic interviewer's responses regarding other alleged sexual contact between the victim and the defendant was not ineffective assistance but instead "represent[ed] an attempt to undermine the credibility" of either the interviewer or the victim); and *Bass v. State*, 713 S.W.2d 782, 785 (Tex. App.—Houston [14th Dist.] 1986, no pet.) (the court concluded that trial counsel did not render ineffective assistance by putting the appellant on the stand and subjecting her to cross-examination regarding her prior offenses; establishing the appellant's lack of intent, which was her only real defense, was a plausible trial tactic).

Here, a review of the record shows that challenging identity was one of the few strategies available to Appellant's defense counsel. The State presented overwhelming evidence connecting Appellant to the car that contained the property stolen from the Valero. Appellant matched the description of the men seen fleeing the red sedan after it crashed on the interstate and, shortly thereafter, Appellant and

Allen were found hiding in a bamboo thicket near the scene of the accident. According to Officer Sierra, he was speaking with Appellant after Appellant was found in the bamboo thicket and Appellant "requested medical attention because he had just been involved in a vehicular crash." Officer Sierra also testified that Appellant told him "to go ahead and charge him with evading. That he'll just do his time." Moreover, according to the testimony from the forensic science witnesses, a "preliminary association" was made between the fingerprints recovered from the red sedan and those of Appellant.

Against this backdrop, Appellant's defense counsel could not reasonably contend that Appellant was not one of the three men that fled the red sedan after it crashed on the interstate. But defense counsel could plausibly argue that Appellant was not one of the three suspects that robbed the Valero and that his connection to the vehicle containing the stolen property was an unfortunate coincidence. Defense counsel's examination of witnesses and closing argument hewed to this trial strategy and consistently challenged whether Appellant could be identified as one of the suspects that perpetuated the robbery.

Because there was no evidentiary motion for new trial, defense counsel had no opportunity to explain his actions that preceded the admission of evidence regarding Appellant's prior convictions. Accordingly, we will not conclude those actions were deficient unless they can be deemed "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308. Because the actions Appellant complains of could have been part of a plausible trial strategy, they do not rise to the level necessary to show ineffective assistance under the first *Strickland* prong. *See Strickland*, 466 U.S. at 697; *Nichols*, 494 S.W. 3d at 857; *see also Osby*, 2019 WL 2305937, at *5; *Bass*, 713 S.W.2d at 785.

We overrule Appellant's first ineffective-assistance argument.

11

## B.    Defense Counsel's Statements to the Venire Panel

In his second ineffective-assistance argument, Appellant contends his defense counsel "abdicated his role as a defense attorney" by making certain statements during voir dire that demonstrated a conflict of interest. Specifically, Appellant points to the following statements:

> Let's discuss that. Let's discuss my role in this trial.
>
> My role is not to make sure [Appellant] goes home at the end of this case. My role is to defend the Constitution. The reason why I say that is because anybody could end up in this seat.
>
> As of September 1st, 802 new laws came into effect in the State of Texas. Meaning that there are lots of ways for you to end up in this seat. And it could be you, a loved one, family member, friend. And if they were in the seat — we would all agree — you'd want somebody to defend you to make sure that your rights were — that you had your rights [] maintained, correct?
>
> So, that's my job. It's to make sure that [Appellant's] rights are respected. I'm not here to — as people say — criminal defense attorneys who put criminals on the street. I don't do that. I make sure that our Constitution is available to every one of us.

Appellant argues that he was "entitled to an attorney who represented *him* — not the Constitution." (emphasis in original).

Appellant contends that this argument is properly evaluated pursuant to the standard set forth in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), which applies to claims alleging a conflict of interest. Under this standard, an appellant asserting ineffective assistance derived from a conflict of interest need only show that trial counsel "actively represented conflicting interests" and that counsel's performance at trial was "adversely affected" by the conflict of interest. *Id.* at 349-50; *see also Acosta v. State*, 233 S.W.3d 349, 352-53 (Tex. Crim. App. 2007).

Appellant does not cite any case law or other authority to support his

12

contention that defense counsel "represented conflicting interests" by advocating for both Appellant and the Constitution during voir dire. Rather, these statements reasonably reflect the duties defense counsel undertook in his role as Appellant's legal representative.

"An attorney who represents a criminal defendant is 'bound by professional duty to present all available evidence and arguments in support of [the defendant's] positions and to contest with vigor all adverse evidence and views.'" *Thomas v. State*, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 787 (1973)). Effectively executing this role requires that a defense attorney protect a criminal defendant's constitutional rights. *See Bailey v. State*, 469 S.W.3d 762, 773 (Tex. App.—Houston [1st Dist.] 2015), *aff'd*, 507 S.W.3d 740 (Tex. Crim. App. 2016) ("The constitutional right to counsel in a criminal prosecution exists to protect the fundamental rights to a fair trial."); *see also Cannon v. State*, 252 S.W.3d 342, 352 (Tex. Crim. App. 2008) ("every defense counsel owes to his client his zealousness, competence, and diligence").

Accordingly, the statements Appellant challenges do not evidence a conflict of interests but instead summarize defense counsel's professional duty in the underlying proceeding. *See Cannon*, 252 S.W.3d at 352; *Thomas*, 550 S.W.2d at 68; and *Bailey*, 469 S.W.3d at 773. Therefore, these statements do not show Appellant received ineffective assistance of counsel in the underlying proceeding.

We overrule Appellant's second ineffective-assistance argument.

## CONCLUSION

We affirm the trial court's judgment.

13

/s/    Meagan Hassan
          Justice


Panel consists of Justices Spain, Hassan, and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b).